# CIRCUIT COURT OF THE CITY OF NORFOLK

Clarissa Lacey Scott

    v.

Anthony Beason,
VIP & Celebrity Limousines, Inc.,
t/a Carey VIP & Celebrity Limousines,
and Romeo A. Dionisio, Jr.

May 21, 2003

Case No. (Law) L00-3031

BY JUDGE LYDIA CALVERT TAYLOR

This case came before the Court on defendant's motion to vacate a May 10, 2002, judgment for plaintiff as either void or obtained by fraud, under Virginia Code § 8.01-428, by interpreting the Court's previous orders as having already dismissed the suit as to defendant VIP on April 6, 2001. This Court, having studied the orders themselves and the sequence of their entry before entry of the May 10, 2002, judgment, finds no need to determine whether another judge of this Court had the authority to enter the so-called clarification order of December 14, 2001, and did not act in response to fraud by plaintiff's attorney, and assuming *arguendo*, that that order was so obtained by constructive fraud, the undersigned, after a full hearing and briefs from both sides, interprets its prior orders as dismissing the case against a codefendant, but retaining the case against defendant VIP.

*Procedural Facts*

On December 28, 2000, Scott filed suit against three defendants, Beason, VIP/Celebrity Limos ("VIP"), and Dionisio. Scott was a passenger in a VIP limousine driven by Beason, and Dionisio was the driver of another vehicle that collided with the limousine. This Court, in accord with its long-time procedures and rules, mailed a letter to plaintiff and to all party defendants who had been served, setting a scheduling conference with the Court. The letter went out near the end of February, six weeks before the proposed conference date of April 6, 2001. The letter was sent to counsel for the plaintiff and for defendant Dionisio, as the latter was the only defendant who had filed a responsive pleading to the plaintiff's motion for judgment. The letter setting this conference stated: "Attendance of *both counsel* is mandatory unless an endorsed scheduling order is filed by the close of business on the preceding date. If a scheduling order is not so filed and counsel for the plaintiff fails to appear at the conference, the case will be dismissed without prejudice." (Emphasis in original.)

Some three weeks prior to the April 6 scheduling conference, on March 14, 2001, Scott filed a Notice and Motion for Entry of Judgment by Default against VIP, for failure to file a responsive pleading within twenty-one days from January 8, 2001, the date service was made upon VIP. On March 27, 2001, the date set in the March 14 Notice, this Court entered a default judgment against VIP pursuant to Scott's notice of the proposed entry of default judgment. The day before, on March 26, 2001, Scott had nonsuited the case against Dionisio. Thus, by the end of March, the only defendant that remained in the case without any action taken for whom trial needed to be scheduled was Beason.

On April 6, 2001, because no one appeared at the scheduling conference and no scheduling order had been filed, the Court entered an order dismissing the action without prejudice as to Beason, the only defendant left in the suit and the only defendant named in the order. That dismissal order, which was entered ten days after the default judgment had been entered against VIP, made no reference to VIP nor did it vacate the earlier default judgment against VIP.

According to the stipulations of counsel for both Scott and VIP, at some point, correspondence dealing with the status of the proceedings ensued between Scott and VIP. VIP, having searched the Court's file, argued to Scott that the April 6, 2001, order in effect vacated the March 27, 2001, default judgment against VIP and dismissed the case as to that defendant. Scott, on

the other hand, argued to VIP that the March 27, 2001, default judgment against VIP remained in effect when the April 6, 2001, order was entered, which order only dismissed the action as to Beason, not VIP as well. On December 14, 2001, the plaintiff asked Judge John C. Morrison, Jr., of this Court to clarify the two orders. However, it did not give notice of its intent to seek a clarification order to VIP, who was in default, had filed no responsive pleadings, and for whom its counsel had made no appearance.

On May 10, 2002, a jury heard Scott's case against VIP for damages only, setting damages against VIP at $500,000 on the earlier default judgment.

On September 16, 2002, VIP moved for the Court to set aside the December 14, 2001, clarification order and the May 10, 2002, damages order, asserting that both orders were void because the Court lacked jurisdiction to enter any orders against VIP twenty-one days after the April 6, 2001, dismissal order. VIP claimed that the April 6, 2001, order dismissed the entire lawsuit as against all defendants, not just Beason, including vacating the default judgment on liability against VIP earlier entered on March 27, 2001. Alternatively, VIP contends that even if the Court had jurisdiction to enter the orders, the two orders of whose entry VIP was not notified, the clarification order of December 14, 2001, and the damages award of May 10, 2002, were obtained by fraud on the court because VIP was not notified by plaintiff of their proposed entry.

### Discussion

#### A. *Jurisdiction of Court*

"A court speaks through its written orders. And, 'orders speak as of the day they were entered'." *Wagner v. Shird*, 257 Va. 584, 588 (1999) (quoting *Davis v. Mullens*, 251 Va. 141, 148 (1996)) (citations omitted).

Under Rule 1:1, "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." The Virginia Supreme Court stated in *Super Fresh Food Markets of Va., Inc. v. Ruffin*, 263 Va. 555 (2002), that "[t]he running of the twenty-one day time period prescribed by Rule 1:1 may be interrupted only by

---

[1] On May 17, 2002, the Court made a ministerial correction to the order to reflect that the order only dealt with damages, not liability.

the entry, within the twenty-one day time period, of an order modifying, vacating, or suspending the final judgment order." *Id.* at 560. In *Super Fresh*, the trial court entered a final judgment on August 23, 2000, and then, on September 12, 2000, "entered an order stating that 'this court shall retain jurisdiction over this action until such time as this court may consider and rule on Super Fresh's motion for reconsideration'." *Id.* at 559. The Virginia Supreme Court, however, held that the September 12, 2000, order did not constitute an order modifying, vacating, or suspending the trial court's August 23, 2000, order; therefore, the trial court lost jurisdiction over the matter twenty-one days after the August 23, 2000, order's entry. Only "an order that *expressly* modifies, vacates, or suspends the judgment" will interrupt the twenty-one day period. *Id.* at 562 (emphasis added).

A final order, however, "is one which disposes of the entire action and leaves nothing to be done except the ministerial superintendence of execution of the judgment." *Id.* at 560. Under this definition, the March 27, 2001, order for default judgment against VIP is not a final judgment, because the amount of damages had yet to be determined. Although the default judgment is not a final judgment under Rule 1:1, nevertheless, any action modifying that default should have referenced the prior default judgment order for clarity by expressly vacating it. A court cannot, without sacrificing the clarity of its orders, modify, vacate, or suspend a judgment it had previously entered (here, a default judgment against VIP on March 27, 2001), without expressly doing so in the later order, that is, the dismissal order of April 6, 2001. Thus, it would be illogical for the Court to have vacated an order for default judgment by subsequently dismissing the case, without mentioning the fact that the default judgment was being vacated and was no longer in effect. Rather, the later order would logically have specifically referenced the earlier order (and its entry date) that was being vacated.

However, even assuming *arguendo* that such logic should not be expected in such an order and that such reasoning should not be used to interpret orders other than a final order under Rule 1:1, it is apparent that the April 6, 2001, order to dismiss the case without prejudice only applies to Scott's case against Beason and did not, nor was it intended to, affect the March 27, 2001, default judgment already entered against VIP. The style of the April 6, 2001, order only contains Beason's name as "defendant." VIP, however, suggests that, because the order was filled out by hand, the Court was probably just writing in shorthand, using only the name of the first defendant. Even if the undersigned viewed the order as ambiguous, however, VIP's theory is pure

surmise, as there is no evidence that such was the case. Additionally, this reasoning is not plausible because the person that filled out the April 6, 2001, order, clerk or judge, wrote out the plaintiff's entire name, Clarissa Lacey Scott, which makes the shorthand theory unlikely. Even if the clerk or judge used shorthand in writing only Beason's name, while leaving off the names of the other two defendants, the scrivener easily could have added "*et al.*," which was not written after Beason's name. Additionally, it is also notable that the order refers to the "Defendant" in singular form. Adding an "s" to "Defendant" to indicate that the case was being dismissed as to both Beason and VIP would have been even easier. Based on the four corners of the document, especially in light of this Court's procedures and the earlier orders entered by the Court, there is no ambiguity; the April 6, 2001, dismissal order purports to dismiss Beason and no other defendant. That is consistent with the fact that on April 6, 2001, Dionisio had been nonsuited and a default judgment had already been taken against VIP; Beason was the only defendant as to which Scott had taken no action as of April 6, 2001.

The Court speaks through its orders. In its March 27, 2001, order, the Court stated that a default judgment was being entered against VIP; thus, all that was left in the proceeding against VIP was the need to "set with the Clerk of this Court a date for determination of damages." *Order for J. by Default*, dated March 27, 2001 (Fulton, J.). No order entered by this Court reflects that the default judgment had been overturned; the April 6, 2001, order does not even mention the March 27, 2001, default judgment. The purpose of the April 6, 2001, scheduling conference, at which no one appeared, was to create a scheduling order. Because a default judgment had already been obtained against VIP and a nonsuit taken as to defendant Dionisio, before April 6, 2001, there was no need for the cases against VIP or Dionisio to be a part of the scheduling conference or order.[2] All Scott was required to do in her case against VIP was to follow the March 27, 2001, Order for Judgment by Default by setting the matter down for a hearing to establish damages.

Upon request by plaintiff Scott, with no notice to the defaulted defendant, VIP, Judge Morrison reviewed the file and set out in a clarifying order dated December 14, 2001, that the default judgment against VIP still stood and that the April 6, 2001, order only dismissed the case against Beason. VIP has

---

[2] As to the only defendant against whom liability had not been established or nonsuit granted, Beason, the Court dismissed that matter when plaintiff failed to appear to pursue that matter on April 6, 2001. Thus, the sequence of events conforms with the words of the April 6, 2001, order itself.

called this clarification order into question, asserting it was procured by fraud because VIP had had telephone conversations with plaintiff outside the court context and should have been noticed by plaintiff. Even if the December order was procured by fraud, however, this judge, after a full hearing for both sides, finds that the March 27, 2001, and April 6, 2001, orders speak for themselves, that the default judgment against VIP is valid, and that the case was dismissed without prejudice as to Beason only. Thus, even if Scott should have notified VIP of the December 14, 2001, hearing, VIP has now had its full opportunity to be heard on the issues dealt with in the December 14, 2001, clarification order. Scott acted completely properly in respect to the March 27, 2001, April 6, 2001, and May 10, 2002, orders. VIP had filed no answer, made no appearance, and insisted that it had been dismissed from the case many months before, yet failed to ask this Court to so rule on the matter until nearly a year after VIP first discovered that VIP and Scott had a difference of opinion as to the effect of the prior actions of this Court. Nor did VIP's counsel ever notify this Court of its position as counsel for VIP, so as to assure notification of any future proceedings. All the while, counsel for VIP admitted, VIP was aware of Scott's contrary position from their telephone conversations and correspondence.

Thus, as of the fall of 2001, before the December 14, 2001, order was entered, not only had VIP given no notice to the Court of its interest in the case, but it had, by its own admission, searched the files, discovered both earlier orders, and disputed their legal effect with plaintiff's counsel. By then, each knew the other's position. Nevertheless, VIP was so certain of its legal position that it intentionally chose not to notify this Court and allow this Court to determine the effect of the two orders. At that time, the default, even if entered validly, was not yet final and could have been vacated if wrongly entered; additionally, VIP knew that, if its position was wrong, the Court would have no knowledge of its interest in the case and thus would not require any notice to VIP, as a defendant in default, of any hearing set on damages. The hearing that it finally requested on September 16, 2002, could well have been held before the damages hearing, or at least within twenty-one days after such hearing, when this Court still retained jurisdiction. Instead, VIP chose to sit on its rights, never again checking the file nor making any appearance. For all these reasons, this Court rules that it not only had jurisdiction to enter the default judgment against VIP, which was never vacated or dismissed, but it had jurisdiction as well to hold a jury trial on damages against VIP on May 10, 2002, and enter judgment on that verdict.

## B. *Fraud on the Court*

VIP also argues that the December 14, 2001, and May 17, 2002, orders are void because they were obtained through fraud on the court. Pursuant to Virginia Code § 8.01-428(A), "[u]pon motion of the plaintiff or judgment debtor and after reasonable notice to the opposite party, his attorney of record or other agent, the court may set aside a judgment by default ... upon the following grounds: (i) fraud on the court." Va. Code Ann. § 8.01-428(A) (Michie 2002).

Attorneys have "a duty to be above-board with the court and fair with opposing counsel." *National Airlines, Inc. v. Shea*, 223 Va. 578, 583 (1982). In *National Airlines*, the plaintiff's counsel knew defense counsel thought the trial date had been postponed due to a continuance. The plaintiff's counsel, however, failed to disclose this information to the trial court during the default judgment proceedings. The trial court granted the plaintiff a default judgment against the defendant. The Virginia Supreme Court held that "a default judgment obtained by misleading a defendant into thinking a continuance had been agreed upon is fraudulent and should be set aside." *Id.* at 583. The Court further explained that:

> "In general, a person is required to speak only when common honesty or fair dealing demand that he do so, and in order that a party may be estopped by silence, there must be on his part an intent to mislead, or at least a willingness that others should be deceived, together with knowledge or reason to suppose that someone is relying on such silence or inaction and in consequence thereof is acting or is about to act as he would not act otherwise. . . ." These are the rules of the market place. Higher standards should prevail in the practice of law.

*Id.* (quoting *Cantrell v. Parsons*, 142 Va. 163, 168 (1925)).

In the case at bar, VIP alleges that Scott's counsel engaged in fraud on the court when he presented the December 14, 2001, order to the Court clarifying past judgments. VIP claims that its counsel exchanged letters with Scott's counsel, explaining that VIP thought that the April 6, 2001, order dismissed the default against VIP. It further contends that Scott's counsel knew of VIP's position and failed to notify VIP that he was presenting an order to the Court

to clarify the rulings. VIP also argues that Scott's counsel did not disclose the confusion to the Court before the Court signed the December 14, 2001, order.

Scott's attorney failed to disclose to the Court VIP's concerns and failed to disclose to VIP his intentions to obtain the clarifying order, but Scott's attorney had no legal obligation under the Rules of Court to notice VIP of his intention to obtain a clarification order because VIP had not made an appearance. Although aware of Scott's position as to the two orders, VIP nonetheless failed to make an appearance in the matter or to seek a ruling from this Court until almost a year after it first learned of the difference of opinion between counsel as to the two orders.

Despite VIP's failure to act diligently to protect itself, Scott's attorney did owe the Court a duty to inform it of all material facts, rather than having "at least a willingness that others should be deceived." *Id.* Such could be inferred from the fact that Scott's attorney knew VIP disputed the effect of the April 6, 2001, order and yet presented the December 14, 2001, clarifying order without disclosing VIP's concerns to the Court. It also could be inferred from the facts that Scott's attorney had reason to suppose that the Court was relying on such silence. It, however, is unclear if the Court acted in a manner it would not have had the Court known of VIP's objection. In addition, the effect of the order is now a nullity, as the undersigned disregarded that order in reinterpreting and reclarifying the prior orders, based on their exact wording in light of the case law, without regard to the December 14, 2001, order.

Attorneys do have a heightened duty to the court. The United States District Court for the Eastern District of Virginia noted that "[c]ourts rely on counsel to inform them fully as to all facts and circumstances that might materially affect the court in reaching a decision." *Spence-Parker v. Maryland Ins. Group*, 937 F. Supp. 551, 560 (E.D. Va. 1996). In *Spence-Parker*, the attorneys involved in the case failed to tell the court that the consent settlement they reached was through nonadversarial means. The district court held that the attorneys engaged in constructive fraud when they failed to disclose the nonadversarial nature of the settlement. The court explained that constructive fraud is "that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Id.* at 562.

Such acts of fraud do not require that the attorney intended to mislead the court, *id.* at 560 (citing *Chandler v. Satchell*, 160 Va. 160 (1933)); constructive fraud can also amount to fraud on the court. *Id.* To prove

constructive fraud, the proponent of the argument must establish "by clear, cogent, and convincing evidence … [i] that there was a material false representation, [ii] that the hearer believed it to be true, [iii] that it was meant to be acted on, [iv] that it was acted on, and [v] that damage was sustained." *Id.* (quoting *Chandler*, 160 Va. 160 (1933)). In the case at bar, unlike in *Spence-Parker*, the silence of Scott's counsel does not seems to amount "to a misrepresentation because counsel [was] under a duty to disclose that fact to the court." *Id.* (citing Virginia Code of Professional Responsibility).

In addition, there is no evidence that counsel for Scott acted to mislead or did mislead Judge Morrison, even by silence, on December 14, 2001. Rule 3:3(a) of the Virginia Rules of Professional Conduct requires those attorneys engaged in *ex parte* proceedings to inform the court of "all material facts know to [them] which will enable the tribunal to make an informed decision, whether or not the facts are adverse." However, there were no facts to be discussed, but rather the opinion VIP's counsel had expressed to Scott's attorney about the effect of the April 6, 2001, order. If a defendant does not choose to answer and/or make an appearance before a court, the plaintiff is not acting *ex parte* when it appears before the court without notice to, or the presence of, the defaulted defendant. It is not clear to the undersigned that this amounts to a material false representation, but, if it does, there were no damages to VIP from that order, as the undersigned interpreted those orders *de novo*, giving every opportunity to VIP to argue its position. The end result was the same; the Court's orders demonstrate that only Beason was dismissed from the case on April 6, 2001, a valid default judgment on liability having been entered against VIP on March 27, 2001. In short, the December 14, 2001, order was entered by Judge Morrison without knowledge that the effect of the prior orders was questioned by VIP; however, no damage was sustained by VIP, because the December 14, 2001, order merely reiterated the earlier orders, and VIP now has had a full opportunity to argue its position. It, therefore, does not appear that Scott's counsel committed active or constructive fraud on the court, but if it did, it caused no damage to VIP, which has now been fully heard on those issues.

The March 27, 2001, default order still stands; even if this Court is wrong and there was fraud in December, 2001, no fraud was used to procure the valid default judgment order of March 27, 2001. "A court speaks through its written orders. And, 'orders speak as of the day they were entered'." *Wagner v. Shird*, 257 Va. 584, 588 (1999) (quoting *Davis v. Mullens*, 251 Va. 141, 148 (1996)) (citations omitted). The March 27, 2001, default speaks as of its

date of entry, and the April 6, 2001, dismissal of the case against Beason speaks as of its date of entry. The December 14, 2001, order did not provide anything more than what was provided in those earlier orders; it simply reiterated the earlier March and April orders. Therefore, even if fraud on the court occurred, the default judgment and judgment for damages against VIP are still valid pursuant to the March 27, 2001, order.

As to the May 10, 2002, damages order, there could have been no reasonable reliance by the defendant VIP, as it was fully aware over six months before that plaintiff's position was that it had a valid default judgment against VIP, yet it determined not to inform the Court of its representation, nor to ask Scott to notify counsel of any damages hearing, even if choosing not to make a formal appearance as counsel, nor to continue to check the court file. Over half a year after its conversations with Scott and its knowledge that Scott's position was that it was going to proceed to damages on its default judgment order, VIP "sat on its rights," never notifying the Court of its position and never again checking the Court file, though it was fully aware of Scott's position. Such reliance could not be seen as reasonable; therefore, VIP bears the full responsibility for not receiving notice of the damages hearing. It only moved to bring its position to the Court's attention one year after it became aware of the default judgment entered against it, when post judgment remedies brought the matter, which it apparently stopped monitoring, back to its attention.

In sum, the December 14, 2001, clarification order and the May 17, 2002, damages order are not void, as the Court neither lacked jurisdiction to enter the orders, nor were the orders obtained by fraud on the court.

Plaintiff should prepare and circulate an order denying Defendant's motion under Virginia Code § 8.01-428(B).