# Richmond

## JUNIUS TEASLEY v. COMMONWEALTH OF VIRGINIA.

October 11, 1948.

Record No. 3446.

Present, All the Justices.

*W. A. Hall, Jr.*, for the appellant.

*J. Lindsay Almond, Jr., Attorney General* and *Ballard Baker, Special Assistant to the Attorney General,* for the Commonwealth.

BUCHANAN, J., delivered the opinion of the court.

On October 16, 1945, on an indictment charging him and Eugene Lewis with burglary, Teasley, the appellant, was sentenced to eighteen years in the penitentiary by the Circuit Court of Hanover county. This was the order showing the sentence:

"This day came the Attorney for the Commonwealth, and the accused Eugene Lewis and Junius Teasley, being led to the bar in the custody of the Sheriff, and being represented by Counsel, being arraigned, plead not guilty to the indictment, and they each having elected to be tried by the Judge and not by a jury, and the Attorney for the Commonwealth not requiring a jury, the Court with the consent of both proceeded to hear the case without the intervention of a jury, and there being nothing offered or alleged in delay thereof it is the judgment of the Court that the accused Eugene Lewis and Junius Teasley be confined in the State Penitentiary for the term of eighteen (18) years, each. Such term to begin as of August 11th, 1945, the day they were confined to jail awaiting trial. And the prisoners are remanded to jail."

Afterwards, on December 3, 1947, Teasley, by his next friend, filed in the Hustings Court of the city of Richmond, Part II, his petition for a writ of *habeas corpus*, alleging that his sentence was a nullity and that he was unlawfully imprisoned because this order did not show (1) that the Commonwealth's attorney consented to the waiver of a jury, and (2) that the judge found the defendant guilty before sentencing him. He also alleged that the sentence was excessive.

The superintendent of the penitentiary filed an answer conceding that the order was fatally defective in failing to show a finding of guilty, and consenting that the writ of *habeas corpus* should issue. On December 30, 1947, the Hustings Court entered its order holding that the order and commitment of October 16, 1945, was defective, and directing that the superintendent of the penitentiary release Teasley from custody under said order and remand him to the custody of the sheriff of Hanover county "for such further action as the Commonwealth may be advised."

On May 17, 1948, the Circuit Court of Hanover county, on motion of the Commonwealth's attorney, after notice, in the presence of the prisoner and his counsel, entered a *nunc pro tunc* order supplying the alleged omissions in the order of October 16, 1945, on the basis of that order and without hearing any other evidence. The *nunc pro tunc* order states that "it was and is the judgment of the Court that the accused is guilty of burglary as charged in said indictment and he was and is found guilty of said offense." He was again sentenced and remanded to the penitentiary "to finish the service of his sentence therein."

Appellant contends, first, that it was error to enter that order because his discharge on *habeas corpus* was a final disposition of the case unless reversed on appeal. The answer to that contention is clear.

█ Section 5853 of the Code, (Michie, 1942), provides that the court hearing a petition for *habeas corpus* shall either discharge or remand the petitioner, or admit him to bail; and section 5857 of that Code provides that the judgment, entered of record, shall be conclusive unless the same be reversed. The judgment of the Hustings Court was, as noted, that the order of October 16, 1945, was defective, and that the prisoner be released from the penitentiary and remanded to the sheriff of Hanover county for further action. The further action contemplated was, of course, the curing of the admitted defect in the order of sentence. Whether it was necessary to remand the prisoner to the Circuit Court of Hanover county to correct that defect is now beside the point. See Anno., 10 A. L. R. at p. 543; 30 Am. Jur., Judgments, section 95, p. 867; *Ex parte Mattox*, 137 Tex. Cr. 380, 129 S. W. (2d) 641. At any rate, the judgment of the Hustings Court was not contested and the proceedings that followed were as permitted by that judgment, not contrary to it or in any way disregarding or overruling it.

The appellant contends, second, that there is nothing upon which the *nunc pro tunc* order could be properly entered.

█ The power of courts to enter orders *nunc pro tunc*,

to correct clerical, as distinguished from judicial, errors is too firmly established to be questioned. It is an inherent power, existing independently of statute. *Gagnon* v. *United States*, 193 U. S. 451, 24 S. Ct. 510, 48 L. Ed. 745; *Chaney* v. *State Compensation Com'r*, 127 W. Va. 521, 33 S. E. (2d) 284; 30 Am. Jur., Judgments, section 96, p. 867; 49 C. J. S., Judgments, section 236, p. 448. Myriad examples of its use in both civil and criminal cases may be seen in annotations in 5 A. L. R., p. 1127; 10 A. L. R., p. 526; 67 A. L. R., p. 828 and 126 A. L. R., p. 956.

The power is limited to the correction of clerical or formal errors, to make the record speak the truth; but it extends to mistakes apparent on the record, whether made by the clerk or by the court, if not made in the exercise of the judicial function. If the mistake is one committed in the exercise of the judgment or discretion of the court, a judicial error, it cannot be corrected by *nunc pro tunc* order after the judgment has become final. 49 C. J. S., Judgments, sections 237-8, pp. 449-454; Annotations, A. L. R., *supra*.

The use of the order extends also to supplying, in proper cases, matter which was properly part of the judgment, and so intended, but negligently or inadvertently omitted therefrom. 49 C. J. S., Judgments, section 240, p. 455; 30 Am. Jur., Judgments, section 108, p. 874.

The holdings of this court have been in accord with these general rules. In *Weatherman* v. *Commonwealth*, 91 Va. 796, 799-800, 22 S. E. 349, 350-1, we said:

"The power of courts to make entries of judgments and orders *nunc pro tunc*, in proper cases and in furtherance of the ends of justice, has been recognized and exercised from the earliest times; and the period in which the power may be exercised is not limited. * * * And this power may be exercised as well in criminal prosecutions as in civil cases. * * *"

But in applying the principle we have put a narrower limitation on the evidence required as a basis for the order than do perhaps a majority of the courts. In some jurisdictions the correction may be made on any competent

extrinsic evidence. In Virginia, however, it can only be made when there is something in the record by which it can be safely made. In *Barnes* v. *Commonwealth*, 92 Va. 794, 800, 23 S. E. 784, 786, we held:

"Whether the authority of the courts in this State to amend their records after the term at which a final judgment has been entered be derived solely from our statute, or from both the common law and the statute, it is clear that under our statutes, decisions, and practice, whatever may be the rule in other jurisdictions, they can only make amendments in cases in which there is something in the record by which they can be safely made, and that amendments cannot be made upon the individual recollection of the judge, or upon proofs *aliunde*."

We said also in *Gilligan* v. *Commonwealth*, 99 Va. 816, 822, 37 S. E. 962, 963-4:

"But while no intendment can supply an omission from the record of that which is material, all proper inferences may, and must be, drawn from that which does appear, and while the presumption that all things have been properly done in a court of record cannot be resorted to in a criminal case, it is equally true that there can be no presumption of error."

The controversy there was whether it sufficiently appeared from the record that the verdict was rendered by the jury in open court in the presence of the prisoner. The order stated that the jury "retired to their room to consult of their verdict as follows. to-wit:" followed by the verdict and a motion of the prisoner not to proceed to judgment upon it, but to set it aside and grant him a new trial. It was held that the record sufficiently, indeed completely, identified the verdict; that the omission of the usual recital that the jury returned into court with their verdict was supplied by the other recitals, for, if the jury were shown by the record to have been in the presence of the court, and there was nothing in the record to indicate their departure from the court, then from necessity their verdict must have been rendered in the presence of the court; and

that any doubt about the presence of the prisoner was put at rest by what the record showed to be the action of the prisoner after the verdict. "* * * Taking the facts as they appear from the record, and making from them merely reasonable inferences, supplying by presumption no fact whatsoever we are bound to conclude that the verdict was regularly arrived at, rendered, and recorded." *Gilligan* v. *Commonwealth, supra,* 99 Va. 824, 37 S. E. 964-5.

In this light we examine the original order of sentence to see whether only proper inferences were drawn from it as a basis for the *nunc pro tunc* order complained of. While there is no presumption that all things were properly done, there is likewise no presumption that there was error in what the record shows was done. *Gilligan* v. *Commonwealth, supra.*

It is plain enough that the contention that the original order did not show the "consent" of the Commonwealth's attorney to the waiver of a jury is without merit. Section 8 of our Constitution provides that if the accused plead not guilty, with his consent "and the concurrence of the Commonwealth's attorney" and of the court, entered of record, he may waive a jury. Here the order recited that the accused elected to be tried by the judge and not by a jury, "and the Attorney for the Commonwealth not requiring a jury, the Court with the consent of both proceeded to hear the case." The concurrence of the Commonwealth's attorney could hardly be more plainly stated. See *Cobb* v. *Commonwealth,* 152 Va. 941, 146 S. E. 270.

The statement that the court "proceeded to hear the case" could have no other meaning than that the court heard the evidence offered. It found, so the order states, "nothing offered or alleged in delay thereof;" that is, nothing offered or alleged in delay of sentence. It was accordingly "the judgment of the court" that the defendant be confined in the penitentiary for eighteen years. There was, therefore, a finding that the evidence established the guilt of the accused beyond a reasonable doubt, as required by law; otherwise, the court could not correctly have found, as it

did find, that there was nothing offered, or even alleged, in delay of proceeding to judgment. The act of the court in pronouncing the judgment and sentence would, of course, be rank error without its having in fact found from the evidence that the accused was guilty. It is not only a reasonable, it is a necessary, inference from the recorded order that the court found the accused guilty, else its order of sentence was erroneous, which is not to be presumed.

The order is not of itself the judgment of the court. It is the formal evidence of that judgment. It is clear that this order does not completely reflect the action of the court. Something has been omitted from it. What it omits to state is the formal finding of guilt. But the order itself furnishes the proof that such a finding was in fact made. Both the court and counsel for the defendant knew there was ample to delay sentence if the defendant had not been found guilty, but the order states that nothing was offered or alleged in delay.

■ "* * * It is not necessary that the record state in express terms that a judgment was entered. If the facts shown by it 'are such as to reasonably and fairly carry conviction that a judgment was in fact rendered, this is sufficient.' " 1 Freeman on Judgments, 5th ed., section 127, pp. 235-6.

In *Milam* v. *State*, 24 Ala. App. 403, 136 So. 831 (*certiorari* denied 223 Ala. 410, 136 So. 833), the point was urged that the judgment entry did not show a conviction. The order recorded the jury's verdict of guilty, followed by a sentence by the court. It was held that "though the court did fail to enter up a formal adjudication of guilt, yet this was not necessary where there is, as here, a judgment containing a proper sentence in compliance with the verdict; for from such sentence a judgment of guilt will be implied." (p. 832).

In *Hobson* v. *Youell*, 177 Va. 906, 915, 15 S. E. (2d) 76, 79, one of the grounds of attack on the judgment was that it did not expressly state that the court ascertained that the defendant was guilty of murder in the first degree.

There the court, after a plea of guilty, "proceeded to hear and determine the measure of his punishment," and fixed it at fifty years in the penitentiary. We said: "* * * Fifty years' confinement in the penitentiary clearly indicates that the court ascertained the petitioner to be guilty of murder in the first degree. * * *."

■ "* * * Where the record itself furnishes the means of correction, there seems to be no question as to the power of the court to order the amendment without further proof. * * *." 24 C. J. S., Criminal Law, section 1604, p. 135. Cf. *Powell* v. *Commonwealth*, 182 Va. 327, 28 S. E. (2d) 687.

■ Here the record itself furnishes adequate proof that the defendant was in fact found guilty by the court and it was not error to enter the *nunc pro tunc* order supplying that omission in the original order.

*Affirmed.*