## Richmond

### TERRY J. HARRIS

### v.

### COMMONWEALTH OF VIRGINIA

June 12, 1981.

Record No. 801327.

Present: All the Justices.

*Douglas E. Bywater (Peter D. Greenspun,* on brief), for appellant.
*Thomas D. Bagwell, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

In this criminal appeal, we deal with one aspect of the procedure for transfer of a minor's case from a juvenile court to a circuit court. We also consider a question of double jeopardy.

The chronology is important. On June 23, 1979, a young woman was abducted and raped in woods near an apartment complex in Fairfax County. Within a week, defendant Terry J. Harris, 16 years of age, was taken into custody by Fairfax County juvenile authorities and charged with the offenses. Subsequently, a judge of the local juvenile and domestic relations district court denied the Commonwealth's Attorney's motion that jurisdiction be transferred to the circuit court so the defendant could be tried as

an adult, even though a probation officer's "Transfer Report" recommended certification to the circuit court.

Following the juvenile court's decision to retain jurisdiction of defendant's case, the prosecutor filed notice, as permitted by Code § 16.1-269(E), of his intention to seek removal of the case to the circuit court. In accordance with the statute, the juvenile court papers connected with the charges, including the probation officer's report, were forwarded to the circuit court, and filed there on September 5, 1979.

Applicable to this stage of the certification process, Code § 16.1-269(E) provides in pertinent part as follows, and is the basis for the dispute giving rise to this appeal:

"The circuit court shall, within twenty-one days after receipt of the case from the juvenile court, and after examination of all such papers, reports and orders, enter an order either remanding the case to the juvenile court or advising the Commonwealth's attorney that he may seek an indictment. If the grand jury returns a true bill upon such indictment the jurisdiction of the juvenile court as to such case shall terminate."

Thirteen days after receipt of the case from the juvenile court, the trial judge wrote a letter to defense counsel and the prosecutor on September 18, 1979 as follows:

"I carefully reviewed the Code and contrary to what I told [counsel for the accused], no hearing is necessary in this cause.

"I have carefully considered the file and given consideration to the nature of the charges and the transfer report prepared by Juvenile Probation Officer Peter M. Clark.

"I agree with Mr. Clark's recommendation that Mr. Harris be certified and stand trial as an adult in the Circuit Court. I do not believe that he is amenable to treatment and rehabilitation as a juvenile through available facilities. I further believe that if the charges are proved beyond a reasonable doubt that Mr. Harris should be subject to restraints which juvenile facilities are unable to impose.

"[The Commonwealth's Attorney] will please prepare an order forthwith."

No order was presented to the trial court at that time and none was then entered.

Subsequently, defendant filed on October 25, 1979 a motion that the trial judge reconsider his ruling on the certification. On November 19, 1979, the grand jury indicted defendant on the rape and abduction charges. Four days later, the trial judge denied the motion to reconsider.

On March 5, 1980, the trial of the charges against defendant commenced, the Honorable Lewis D. Morris, another judge of the court below, presiding with a jury. After completion of a portion of the testimony, Judge Morris stated to counsel that his examination of the court file revealed that no order setting forth Judge Jamborsky's decision to certify defendant for trial as an adult had been entered pursuant to § 16.1-269(E), *supra*. During the course of the ensuing discussion between Judge Morris and counsel, the attorney for the defendant stated, "We would move to have it moved down to Juvenile Court and tried, Your Honor." Thereafter, Judge Morris declared a mistrial and excused the jury. An order was entered on that day reciting the grant of a mistrial and remanding the case to the juvenile court.

Two days later, the prosecutor filed a motion for entry of an order *nunc pro tunc* September 18, 1979 to memorialize Judge Jamborsky's ruling granting transfer. The motion was later amended to include a request to set aside the order of Judge Morris that remanded the case to the juvenile court. On March 13, 1980, the motions were granted by the trial judge. In one order, Judge Morris' order of remand was set aside. In another order, entered *nunc pro tunc* September 18, 1979, the trial judge certified defendant for trial as an adult and advised the prosecutor he could seek an indictment on the charges against the defendant.

During the March 1980 term, the grand jury again indicted defendant on the charges. Subsequently, defendant filed a motion to dismiss the indictment on grounds of double jeopardy; it was denied. In an April 1980 jury trial, defendant was found guilty of both charges. Later, the trial judge sentenced defendant to serve in the penitentiary 10 years for the rape plus 20 years, with 18 suspended, for the abduction. Defendant appeals from the May 1980 judgment of conviction.

Defendant's main contentions on appeal are (1) the trial judge erred in entering the *nunc pro tunc* order certifying defendant for trial as an adult and (2) the court improperly permitted defendant

to be tried a second time thus violating the prohibition against double jeopardy.*

█ Upon the first issue, defendant contends the circuit court could acquire jurisdiction of defendant's case only upon compliance with the statutes dealing with transfer, including the portion of § 16.1-269(E) specifying that the circuit court must, within 21 days after receipt of the case from the juvenile court, enter an order advising the Commonwealth's Attorney he may seek an indictment. Defendant urges that because no such order was entered within the specified time, jurisdiction did not attach in the circuit court upon the November 1979 indictment by the grand jury. Consequently, the argument continues, entry in March 1980 of the order *nunc pro tunc* September 1979 was improper because the function of such an order is merely to "make the record entry speak the truth," citing *Council* v. *Commonwealth,* 198 Va. 288, 292, 94 S.E.2d 245, 248 (1956). Here, defendant says, the act of entering the required statutory order never occurred and a *nunc pro tunc* order was thus incorrectly used to rectify the court's error and to show what the court should have done rather than what was actually done. We disagree; the trial court did not abuse its discretion by the *nunc pro tunc* entry.

In *Council,* we adopted the majority rule that "a court has inherent power to correct any clerical error or misprision in the record so as to cause its acts and proceedings to be set forth correctly." *Id.* This power permits placing upon the record evidence of timely judicial action that actually has been taken. *Id.* The power may be exercised not only in civil cases but also in criminal prosecutions. *Weatherman* v. *Commonwealth,* 91 Va. 796, 800, 22 S.E. 349, 351 (1895).

In the present case, as shown by the judge's September 18, 1979 letter to counsel, the trial court had ruled upon the issue submitted, that is, whether defendant's case should be certified to the circuit court for trial. Thus, the record is clear that appropriate judicial action was actually taken at the proper time. The court had rendered its judgment on that issue, even though the

---

* Defendant briefed but did not argue orally another issue; it has no merit. Defendant contended that, although his attorney received notice, he was not personally notified of the juvenile court transfer hearing. Code § 16.1-269(A)(2) generally requires that notice be given both the child and his parent or attorney. Even assuming the notice was deficient, defendant was not prejudiced because the juvenile court denied the prosecutor's motion to transfer. *See Turner* v. *Commonwealth,* 216 Va. 666, 222 S.E.2d 517 (1976).

written order endorsed by the judge, evidencing what the court had decided, had not been entered.

■ There being satisfactory evidence of both the timely rendition and the terms of the judgment, the question then becomes whether the failure to enter a timely order was a "clerical error" within the meaning of the rule allowing a *nunc pro tunc* entry. If it was, the mandate of the statutory provision in question has been fulfilled; if it was not, the certification procedure was defective. We think it was a "clerical error."

The clerical mistakes which may be corrected under the court's inherent power encompass errors made by other officers of the court including attorneys. *Gagnon* v. *United States,* 193 U.S. 451, 456 (1904). *See Dorn* v. *Dorn,* 222 Va. 288, 279 S.E.2d 393 (1981), decided today; *Cutshaw* v. *Cutshaw,* 220 Va. 638, 641, 261 S.E.2d 52, 53 (1979). Here, the failure to enter a timely order was due to attorney error. In his September 18, 1979 letter ruling, the trial judge directed the prosecutor to submit a sketch for an order "forthwith." This was not done within the 21-day period. According to findings of fact later made by the trial judge when ruling on the motion for the *nunc pro tunc* entry, the prosecutor, after being instructed to submit an order "forthwith," prepared such an order and mailed it to defense counsel on October 9, beyond the statutory 21-day period. Defense counsel did not return the order. Instead, counsel for defendant filed the October 25 motion, which did not attack the court's failure to enter the required order, but asked the court to "reconsider [its] determination to certify Terry Jerome Harris to stand trial as an adult." Manifestly, the nonentry of a timely order was caused by the prosecutor's failure to follow directions. That mistake was compounded by the failure of defense counsel to return the order either to the court or the prosecutor. Even though the order was apparently prepared beyond the 21-day period, it could have been entered *nunc pro tunc* well in advance of the November meeting of the grand jury if the order had been returned promptly.

Parenthetically, we reject defendant's contention that the trial judge's negligence contributed to the mistake. The busy trial judge of today cannot be expected to monitor the paper work in each case he decides in order to assure that attorneys follow directions. Once a trial court has instructed counsel to prepare an order "forthwith," the responsibility for prompt drafting and presentation of the order is upon counsel and not the court.

For the foregoing reasons, the *nunc pro tunc* entry was proper, and the statutory directive that an order be entered advising the Commonwealth's Attorney that he may seek an indictment was fulfilled.

The foregoing determination means, of course, that the circuit court had jurisdiction to try the defendant in March 1980 when the mistrial was declared; this brings us to the double jeopardy question. Relying on settled principles stemming from *United States* v. *Perez,* 22 U.S. (9 Wheat.) 579 (1824), defendant argues there was no manifest necessity for aborting the first trial because there were other alternatives available to cure the apparent jurisdictional flaw. He suggests that the trial could have been interrupted for a brief period and that a *nunc pro tunc* order could have been entered correcting the defect.

The Attorney General concedes there was no manifest necessity for declaring a mistrial during the first proceeding. The Commonwealth argues, however, that because the defendant moved during that proceeding to have the case remanded to the juvenile court for trial, the Double Jeopardy Clause does not bar his second trial on the same charges. We agree.

Defense counsel's request made during the jurisdictional discussion at the first trial, "We would move to have it moved down to Juvenile Court and tried, Your Honor," was equivalent to a motion for a mistrial. From a procedural standpoint, the only way the proceeding could be "moved down to Juvenile Court" was for a mistrial to be first declared and the jury dismissed, which was done. When a defendant "successfully seeks to avoid his trial prior to its conclusion by a motion for mistrial, the Double Jeopardy Clause is not offended by a second prosecution." *United States* v. *Scott,* 437 U.S. 82, 93 (1978). Such action by a defendant is considered to be a "deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." *Id. See Jones* v. *Commonwealth,* 220 Va. 666, 672, 261 S.E.2d 538, 542 (1980) (concurring opinion).

Furthermore, the record clearly demonstrates that the mistrial was granted solely to protect defendant's interests. Under such circumstances, a second prosecution is not barred under double jeopardy principles. "Suffice that we are unwilling, where it clearly appears that a mistrial has been granted in the sole interest of the defendant, to hold that its necessary consequence is to bar all retrial." *Gori* v. *United States,* 367 U.S. 364, 369 (1961).

Accordingly, the judgment of conviction will be

*Affirmed.*