COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Elder and Senior Judge Hodges
Argued at Richmond, Virginia


PAUL D. JEFFERSON
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2301-02-2                       JUDGE LARRY G. ELDER
                                                        JANUARY 13, 2004
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF COLONIAL HEIGHTS
                            Herbert C. Gill, Jr., Judge

           William B. Bray (Perry & Bray, on brief), for appellant.

           John H. McLees, Senior Assistant Attorney General (Jerry W.
           Kilgore, Attorney General, on brief), for appellee.


       Paul D. Jefferson (appellant) appeals from the revocation of a portion of his suspended

sentence for grand larceny.  On appeal, he contends the trial court lacked authority to revoke the

suspended sentence when no order was entered expressly convicting him for the charged offense

and the sentencing order was entered *nunc pro tunc* on the date of the show cause proceeding for

the revocation.  We hold the trial court's entry of the sentencing order *nunc pro tunc* was proper

and contained an implicit finding of guilt for the charged offense.  We also hold the court's

revocation of appellant's suspended sentence based on his violation of the conditions of

suspension did not constitute an abuse of discretion on these facts.  Thus, we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

On January 5, 1999, in the Circuit Court for Colonial Heights (the trial court), appellant entered a plea of guilty to a charge that he committed grand larceny on March 19, 1998. With Judge Herbert C. Gill, Jr., presiding, the trial court, after "[hearing] the evidence and argument of counsel," concluded the evidence was sufficient to find appellant guilty of the charged offense but "with[held] finding" and referred appellant for preparation of a presentence report returnable on March 18, 1999. On January 15, 1999, Judge Gill entered an order reflecting these events.

On March 18, 1999, appellant received and signed for a copy of Form CC-1351, titled "Clerk's Notice of Fines and Costs," bearing the case number for the grand larceny charge and a judgment date of March 18, 1999. By means of that form, appellant acknowledged receiving notification of his financial responsibility for enumerated "fines, costs, forfeitures, restitution, and/or penalties," all of which were due on the listed date of judgment and which began to accrue interest forty days after the due date. Appellant also signed Form CC-1379, a notice bearing the case number for the grand larceny charge, in which he acknowledged that his driver's license "will be suspended effective ten days from the date of conviction if no deferred or installment payment is ordered, . . . or ten days following notice that a check or credit card payment has been dishonored by the bank or issuing institution." However, no conviction or sentencing order was entered at that time. No transcript of the March 18, 1999 proceedings is contained in the record.

On April 24, 2002, appellant was convicted of obtaining money by false pretenses in the Dinwiddie County Circuit Court. The District #27 Probation and Parole Office notified the Commonwealth's Attorney for Colonial Heights of this fact. The trial court issued a show cause

order against appellant for failing to comply with "the terms of his suspended sentence" for the grand larceny offense. A capias to show cause was issued on July 25, 2002.

At the show cause hearing held on September 5, 2002, with Judge Gill presiding, appellant's counsel conceded the fact of appellant's April 24, 2002 conviction in Dinwiddie County but indicated he could not find in the court file a sentencing order that "ha[d] been entered" on the underlying grand larceny charge. Judge Gill responded, "There's [no entered order] in here. There's one prepared. . . . I'm going to enter it right now."

Appellant objected to the trial court's revoking the suspension of his sentence for grand larceny based on the Dinwiddie County conviction because the behavior on which the Dinwiddie conviction was based occurred before the date of entry of the sentencing order for the grand larceny conviction. The Commonwealth countered that the court issued its order on the grand larceny charge *verbally* on the sentencing date and that the court could enter the *written* sentencing order *nunc pro tunc*. The court agreed with the Commonwealth and entered the grand larceny order *nunc pro tunc*.

The sentencing order, entered September 5, 2002, *nunc pro tunc* to March 18, 1999, indicated the court had found appellant guilty of the grand larceny charge on January 5, 1999, which contradicted the court's order of January 15, 1999, indicating that, on January 5, 1999, the court had withheld its finding of guilt pending preparation of a presentence report. This apparent conflict was not brought to the attention of the trial court in the show cause proceeding, and appellant's counsel made no objection on the face of the order itself.

The *nunc pro tunc* sentencing order also indicated that on March 18, 1999, the court sentenced appellant to twenty years' incarceration with nineteen years six months suspended on condition that he submit to supervised probation upon release and be of good behavior for twenty years.

In the show cause proceedings, the court revoked appellant's suspended sentence of nineteen years six months and resuspended all but one year of that sentence. It entered an order reflecting that ruling the same day.

## II.

"[A] court has inherent power to correct any clerical error or misprision in the record so as to cause its acts and proceedings to be set forth correctly." Council v. Commonwealth, 198 Va. 288, 292, 94 S.E.2d 245, 248 (1956). "The power may be exercised not only in civil cases but also in criminal prosecutions." Harris v. Commonwealth, 222 Va. 205, 209, 279 S.E.2d 395, 398 (1981).

"This power permits placing upon the record evidence of timely judicial action that has actually been taken." Id. It allows not only the correction of clerical errors in existing orders timely entered but also the entry of orders memorializing action previously taken or judgment previously rendered in a timely fashion. Id. (allowing *nunc pro tunc* entry of order certifying juvenile for trial as an adult where court timely ruled on issue, as memorialized in letter to counsel, but did not enter order before expiration of twenty-one-day period prescribed by applicable statute). This is permissible because "'[a] judgment is the determination by a court of the rights of the parties, as those rights presently exist, upon matters submitted to it in an action or proceeding. A written order or decree endorsed by the judge is but evidence of what the court has decided.'" Rollins v. Bazile, 205 Va. 613, 617, 139 S.E.2d 114, 117 (1964) (quoting Haskins v. Haskins, 185 Va. 1001, 1012, 41 S.E.2d 25, 31 (1947)).

In determining what a court has previously decided and whether the court may enter a *nunc pro tunc* order reflecting that prior decision, "the court may act on any competent evidence." Council, 198 Va. at 292, 94 S.E.2d at 248 (rejecting minority rule, previously in effect in Virginia, that only "record" or "quasi record" evidence may be considered). Such

evidence includes not only "'all writings, minutes, entries, and files in the case, which are sometimes designated as 'quasi records,'" but also any other "competent evidence" available. Id. at 292, 294, 94 S.E.2d at 247, 249 (quoting 1 Freeman on Judgments § 164), cited with approval in Netzer v. Reynolds, 231 Va. 444, 449, 345 S.E.2d 291, 294 (1986); see also Davis v. Mullins, 251 Va. 141, 149, 466 S.E.2d 90, 94 (1996). Other "competent evidence" includes "oral evidence," Council, 198 Va. at 294, 94 S.E.2d at 249, as well as the "trial court's certification of matters that transpired before it," Hunter v. Commonwealth, 23 Va. App. 306, 311, 477 S.E.2d 1, 3 (1996).

"'[T]he evidence constituting the basis for the correction of the record [must] be clear and convincing . . . .'" Council, 198 Va. at 293, 94 S.E.2d at 248 (quoting 21 C.J.S., Courts § 227(d), at 426-27 (1940)). "Whether a record should be corrected by entry *nunc pro tunc* is addressed to the discretion of the court." Id.

Applying these principles to appellant's case, we hold the trial court did not abuse its discretion in entering the sentencing order *nunc pro tunc* and revoking appellant's suspended sentence. The record before the trial court included a copy of Form CC-1351, titled "Clerk's Notice of Fines and Costs," which bore the case number for the grand larceny charge and a judgment date of March 18, 1999. That form contained appellant's signature acknowledging he had received notification of his financial responsibility for enumerated "fines, costs, forfeitures, restitution, and/or penalties," all of which were due on the listed date of judgment and would begin to accrue interest forty days after the date of judgment. The record also apparently contained a sentencing order, which purported to reflect what occurred at the March 18, 1999 sentencing hearing but which had never been entered by the trial court. When the trial court stated its intent to enter the order *nunc pro tunc*, appellant did not contend that the *nunc pro tunc* order inaccurately represented what occurred during the March 18, 1999 proceeding. Because

the record contained competent evidence of what transpired at the March 18, 1999 sentencing hearing and appellant raised no objection to the *content* of the sentencing order, we hold the trial court did not abuse its discretion in entering the order *nunc pro tunc* to March 18, 1999.

Appellant contends that "the terms of [his] suspended sentence had not been set at the time of the . . . misconduct" that formed the basis for his 2002 conviction in Dinwiddie County. We disagree. As set out above, the terms of the suspension were "set" at the time the trial court pronounced sentence, whether or not it entered a contemporaneous order reflecting the sentence or its terms. Further, appellant did not claim the sentencing order improperly reflected what transpired at the 1999 sentencing hearing. Once the court entered that order *nunc pro tunc*, it was effective as if it had been entered on March 18, 1999, prior to appellant's 2002 conviction in Dinwiddie County. Although the order does not indicate appellant was specifically advised that good behavior was a condition of the suspension of his sentence, "a requirement of good behavior is implicit in any suspension of sentence." Singleton v. Commonwealth, 11 Va. App. 575, 577, 400 S.E.2d 205, 206-07 (1991). Thus, we hold that when the *nunc pro tunc* sentencing order was entered and whether appellant was advised that the suspension of sentence was conditioned on his good behavior were irrelevant to the court's authority to revoke that suspension.

Appellant also contends the trial court lacked jurisdiction to revoke appellant's suspended sentence without first making an express finding of guilt. Again we disagree.

The Supreme Court considered a similar issue in Teasley v. Commonwealth, 188 Va. 376, 49 S.E.2d 604 (1948). There, the trial court entered an order stating that it "hear[d] the case without the intervention of a jury, and there being nothing offered or alleged in delay thereof it is the judgment of the Court that the accused . . . be confined to the State Penitentiary for the term of eighteen (18) years." Id. at 379, 49 S.E.2d at 605. Teasley later filed a petition for a writ of

habeas corpus, claiming he was unlawfully imprisoned because the above-quoted "order did not show . . . that the judge found [him] guilty before sentencing him." Id. The Supreme Court held the trial court properly exercised its power to enter a *nunc pro tunc* order indicating Teasley was convicted prior to sentencing: "It is not only a reasonable, it is a necessary, inference from the recorded order that the court found the accused guilty, else its order of sentence was erroneous, which is not to be presumed." Id. at 384, 49 S.E.2d at 607.

Appellant's case differs factually from Teasley, but we hold these differences have no legal impact on our conclusion regarding the validity of appellant's 1999 grand larceny conviction. In Teasley, the court issued only one order. That order failed to state expressly that it found the defendant guilty before sentencing him. In appellant's case, the court issued two orders containing conflicting information. The first order stated the court withheld its finding on the issue of guilt or innocence. The second order stated the court had found appellant guilty in the proceeding memorialized by the first order, and it pronounced sentence on that finding.

Despite these differences, we hold that in appellant's case, as in Teasley, the reasonable and necessary "inference from the recorded order[s] [is] that the court found the accused guilty."[1] Id. This inference is even stronger in appellant's case than in Teasley because the order memorializing the January 5, 1999 proceedings indicates both that appellant entered a plea of guilty and that the trial court found the evidence of guilt sufficient to convict; it merely withheld its finding on the issue of guilt or innocence pending preparation of a pre-sentence report. On these facts, we hold the trial court's sentencing of appellant on March 18, 1999,

---

[1] These two cases differ in one additional respect. In Teasley, the court entered a *nunc pro tunc* order expressly indicating it convicted Teasley prior to sentencing him. In appellant's case, appellant did not present to the trial court the issue of the apparent conflict in the orders and the lack of an express finding of guilt. If appellant had done so in a timely fashion, the trial court could have made an express finding of guilt *nunc pro tunc* under the authority of Teasley. Thus, we hold this distinction also had no legal significance under the facts of this case.

established its intent to find him guilty. See Teasley, 188 Va. at 384, 49 S.E.2d at 607. The court had subject matter jurisdiction to convict and sentence appellant, and whether it convicted him on January 5 or March 18, 1999, it clearly did so prior to sentencing him. See id.; see also Nelson v. Warden, 262 Va. 276, 282-85, 552 S.E.2d 73, 76-78 (2001) (holding failure to notify juvenile's parent of initiation of juvenile proceedings or transfer hearing was non-jurisdictional, waivable issue because court had subject matter jurisdiction over juvenile and claimed error impacted only court's authority to exercise that jurisdiction).

## III.

For these reasons, we hold the trial court's entry of the sentencing order *nunc pro tunc* was proper and contained an implicit finding of guilt for the charged offense. We also hold the court's revocation of appellant's suspended sentence based on his violation of the conditions of suspension did not constitute an abuse of discretion under the facts of this case. Thus, we affirm.

Affirmed.

Benton, J., dissenting.

The principles concerning the entry of orders *nunc pro tunc* are well established and quite clear. "When acting *nunc pro tunc*, . . . the trial court merely corrects the record by entry of an order *nunc pro tunc*, under the accepted fiction that the order relates back to the date of the original action of the court 'now for then.'" Davis v. Mullins, 251 Va. 141, 149, 466 S.E.2d 90, 94 (1996). The trial judge may not enter an order *nunc pro tunc* to create that which did not occur. Holley v. Commonwealth, 6 Va. App. 567, 568, 370 S.E.2d 320, 321 (1988).

> The power to amend should not be confounded with the power to create. While the power is inherent in the court, it is restricted to placing upon the record evidence of judicial action which has actually been taken, and presupposes action taken at the proper time. Under the rule the amendment or *nunc pro tunc* entry should not be made to supply an error of the court or to show what the court should have done as distinguished from what actually occurred. The court's authority in this connection extends no further than the power to make the record entry speak the truth.
>
> More specifically, the purpose of a *nunc pro tunc* entry is to correct mistakes of the clerk or other court officials, or to settle defects or omissions in the record so as to make the record show what actually took place. It is not the function of such entry by a fiction to antedate the actual performance of an act which never occurred, to represent an event as occurring at a date prior to the time of the actual event, "or to make the record show that which never existed."

Council v. Commonwealth, 198 Va. 288, 292-93, 94 S.E.2d 245, 248 (1956) (citations omitted).

Paul D. Jefferson pled guilty to grand larceny at a hearing on January 5, 1999. The record undisputably establishes, however, that the trial judge withheld a finding of guilt. This is indicated in the following paragraph of the order dated January 15, 1999:

> The Court, having heard the evidence and argument of counsel, finds evidence sufficient to find the defendant Guilty of the offense(s) indicated below, but withholds finding and refers the defendant to the Probation and Parole Officer of this district for the preparation of a pre-sentence report returnable on March 18, 1999 at 9:30 a.m.

I agree with the majority opinion's observation that Jefferson appeared before a deputy clerk on March 18, 1999, and signed (i) a "Clerk's Notice of Fines and Costs," acknowledging his responsibility to pay costs and restitution within twelve months and (ii) an acknowledgment that his license will be suspended if he failed to pay the costs imposed. The occurrence of this event does not establish as a fact or permit an inference that the trial judge held a hearing or other proceeding on March 18, 1999. This event is consistent with other cases we have seen involving an informal agreement to withhold a finding of guilt for a period of time to allow restitution and a demonstration of good conduct. See e.g. Connelly v. Commonwealth, 14 Va. App. 888, 889, 420 S.E.2d 244, 245 (1992). The January 15, 1999 order, which does not enter a conviction on the guilty plea, strongly suggests such an accommodation may have occurred in this case.

The trial judge's power to enter a *nunc pro tunc* order "to make the record 'speak the truth' . . . . is to be narrowly construed and applied." Davis, 251 Va. at 149, 466 S.E.2d at 94.

> "[I]t has been held that such entry should be made with great caution and on the most conclusive evidence; that the evidence constituting the basis for the correction of the record be clear and convincing and that the entry be made only where the errors to be corrected are proved beyond all doubt. In cases recognizing the rule that a record might be corrected *nunc pro tunc* on parol evidence alone, it was held that such evidence should be decisive and unequivocal."

Council, 198 Va. at 293, 94 S.E.2d at 248 (citation omitted). The evidence in this case does not satisfy these requirements.

The record indicates that the following occurred on September 5, 2002:

> [Defense attorney]: Your Honor, at this time I would ask the Court to take note of its records. I searched the Court file after I was appointed and I could not find a sentencing order in this case, unless one has been entered that I overlooked. I think that this show cause would not be appropriate because the Circuit Court speaks only through its written orders.

- 10 -

> THE COURT: There's not one in here. There's one prepared. It has not been entered by the Court . . . . I'm going to enter it right now. . . .
>
> [Prosecutor]: Judge, I believe the Court issued its order back on the sentencing date. This is a court of record and the Court did that, although verbally in court, it's been recorded. And the sentencing order can be issued [nunc] pro tunc and entered today.

The record reveals, however, that neither the defense attorney nor the prosecutor who appeared at this 2002 hearing was counsel of record at the January 1999 proceeding. Absent an indication that the prosecutor was present at a hearing on March 18, 1999, her statement that she "believe[d] the Court entered its order back on the sentencing date" is nothing more than supposition. Significantly, the trial judge made no finding at the September 2002 proceeding that he had convicted and sentenced Jefferson on March 18, 1999.

The judge did acknowledge, however, that an unsigned sentencing order was in the file. That unsigned sentencing order apparently was prepared by someone to be entered upon a hearing. Its presence in the file lends credence to the proposition that no hearing occurred on March 18, 1999. That proposition is also supported by the lack of any indication by the trial judge at the September 2002 hearing that he recalled conducting a hearing forty-two months earlier, on March 18, 1999. More telling, the order entered September 5, 2002, *nunc pro tunc* to March 18, 1999, does not recite that the judge convicted Jefferson on March 18, 1999, but, rather, erroneously recites that "on January 5, 1999, the defendant was found guilty." The order of January 15, 1999, that the Commonwealth concedes to be correct, undisputedly establishes that the judge did not convict Jefferson on January 5, 1999 but expressly withheld a finding of guilt. The recitations in the January 5, 1999 order are consistent and import verity. "It is the firmly established law of this Commonwealth that a trial court speaks through its written orders . . . [and that] 'orders speak as of the day they were entered.'" Davis, 251 Va. at 148, 466 S.E.2d at 94 (citations omitted).

- 11 -

I would hold that the record indicates the September 5, 2002 order was entered *nunc pro tunc* "to show what the court should have done as distinguished from what actually occurred." Council, 198 Va. at 292, 94 S.E.2d at 248. Because the record does not establish that the trial judge entered a finding of guilt after he entered the order of January 15, 1999 withholding a finding of guilt, I would reverse the order revoking the suspension of sentence and remand to the trial judge to determine whether to enter an order of conviction consistent with the January 15, 1999 order.