COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, Russell and Athey
Argued by videoconference

**PUBLISHED**

LISA JOHNSON, EXECUTRIX OF THE
  ESTATE OF GRETA R. JOHNSON

                                         OPINION BY
v.      Record No. 0842-20-1           JUDGE ROBERT J. HUMPHREYS
                                      FEBRUARY 9, 2021
TOMMY J. JOHNSON, SR.

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Steven C. Frucci, Judge

Katherine D. Currin (Morris, Crawford & Currin, P.C., on brief),
for appellant.

A. Robinson Winn (Julie A. Currin; W. Ware Morrison, PLC, on
brief), for appellee.

Lisa Johnson ("Lisa"), in her capacity as executrix of the estate of Greta Johnson, assigns

error to the Circuit Court of the City of Virginia Beach's ("circuit court") ruling that it did not

have jurisdiction to enter a final decree of divorce *nunc pro tunc* dissolving the marriage of her

parents, Greta Johnson (Greta) and Tommy Johnson (Tommy).  Additionally, she assigns error to

the circuit court's ruling that even if it did possess jurisdiction to enter a final decree *nunc pro*

*tunc*, the circuit court would deny the motion to do so.

## I.  BACKGROUND

Tommy and Greta were married on May 4, 1974.  On September 11, 2017, Greta filed for

divorce on multiple grounds, including separation for twelve months.

The parties' suit for divorce was heard on February 27, 2020.  After hearing evidence, the

circuit court announced that it would grant a divorce pursuant to Code § 20-91(A)(9) upon

evidence that Tommy and Greta had been separated for one year. It also made oral rulings regarding how the marital property was to be divided.

At the close of the hearing, the circuit court asked Tommy's counsel, to "do the order." Tommy's counsel stated that she would prepare the final order of divorce. The court then added, "And get together with the other counsel . . . and do your exceptions." Tommy's counsel replied that she would do so.

Greta passed away on May 8, 2020. At the time of her death, no written divorce decree had been submitted to the court for entry. Tommy asserted in the circuit court that his counsel drafted a final divorce decree and sent it to counsel for Greta and that the attorneys engaged in a series of written communications over proposed revisions to a draft divorce decree. The process of exchanging drafts and subsequent revisions between counsel went on until Greta's death on May 8, 2020.

Following her death, counsel for Greta submitted a written "Motion for Decree to be Entered *Nunc Pro Tunc*," arguing that a *nunc pro tunc* divorce order[1] based on the oral ruling at the February 27, 2020 hearing was appropriate because, without a pre-death divorce decree, Tommy was still legally Greta's next-of-kin and that would complicate her last wishes.

On June 5, 2020, the circuit court held a hearing on this motion. After hearing arguments of counsel, the circuit court took the motion under advisement until June 16, 2020, when it held that its jurisdiction to enter a decree of divorce ended with Greta's death on May 8, 2020 and denied the motion. A subsequent motion to substitute Lisa as executrix of the estate of Greta Johnson, for Greta, was granted on July 21, 2020. This appeal follows.

---

[1] A *nunc pro tunc* (literally for "now for then") order is a mechanism flowing from both a court's inherent authority and statutory jurisdiction designed to insure that the record "speaks the truth" and is limited to correcting clerical errors or omissions in the record but not for recording an event that never occurred. See Code § 8.01-428(B); Teasley v. Commonwealth, 188 Va. 376, 379 (1948); Antisdel v. Ashby, 279 Va. 42, 45 (2010).

## II. ANALYSIS
### A. Standard of Review

"A . . . court's jurisdiction is a question of law that is reviewed *de novo* on appeal." Brown v. Brown, 69 Va. App. 462, 468 (2018) (quoting Reaves v. Tucker, 67 Va. App. 719, 727 (2017)). In this case, the issue of the circuit court's jurisdiction also impacts the appellate jurisdiction of this Court to consider the merits of the remaining issues on appeal.

### B. Jurisdiction

"While a court always has jurisdiction to determine whether it has subject matter jurisdiction, a judgment on the merits made without subject matter jurisdiction is null and void." Bryant v. Commonwealth, 70 Va. App. 697, 709 (2019) (quoting Porter v. Commonwealth, 276 Va. 203, 228 (2008)). "Subject matter jurisdiction" is defined as the power of a court to adjudicate a specified class of cases. See Nelson v. Warden, 262 Va. 276, 281 (2001) (quoting David Moore v. Commonwealth, 259 Va. 421, 437 (2000)). In Virginia, only circuit courts have original subject matter jurisdiction over suits for divorce and may determine the status of a marriage. See Sprouse v. Griffin, 250 Va. 46, 50 (1995) (quoting Lapidus v. Lapidus, 226 Va. 575, 578 (1984)). Jurisdiction in divorce suits is purely statutory and is conferred in clear language. See id. "The circuit court shall have jurisdiction of suits for annulling or affirming marriage and for divorces . . . and such suits shall be heard by the judge as equitable claims." Code § 20-96.

Put simply, the words "until death do us part" found in traditional marriage vows are reflected in the law of the Commonwealth. A marriage ends upon the death of a spouse. See Brown, 69 Va. App. at 471 ("The death of a spouse determines fully the marital status and therefore leaves nothing to adjudicate."). If this occurs before a final court order or decree, the circuit court no longer has statutory subject matter jurisdiction to grant a divorce. See id. "[A] divorce suit abates when one party dies *while* the suit is pending and *before* a decree on the

merits; this is because the death terminates the marriage, thus rendering the divorce suit moot as it relates to the parties' marital status." Id. (emphasis added) (quoting Sprouse, 250 Va. at 50). The death of one spouse fully determines the marital status and therefore leaves nothing for the courts to adjudicate, as the marriage has already ended. See id.

Here, Greta died after the hearing had concluded and the court announced its ruling but before a decree on the merits had been entered by the circuit court. Thus, unless the circuit court's oral announcement regarding its decision to grant the divorce constituted the point in time at which the marriage here was dissolved, Greta's death terminated the subject matter jurisdiction of the circuit court to do so.

"It is well-established that a court speaks only through its written orders." S'holder Representative Serv. v. Airbus Americas, Inc., 292 Va. 682, 690 (2016) (quoting Temple v. Mary Washington Hosp., 288 Va. 134, 141 (2014)). It is presumed that written orders accurately reflect what transpired during the circuit court's proceedings. See Petrosinelli v. People for the Ethical Treatment of Animals, Inc., 273 Va. 700, 709 (2007). Further, our Supreme Court has repeatedly and explicitly held that a circuit court speaks only through its written orders and "written 'orders speak *as of the day they were entered*.'" Jefferson v. Commonwealth, 298 Va. 473, 477 (2020) (emphasis added) (quoting Davis v. Mullins, 251 Va. 141, 148 (1996)). Essentially, lack of a final order by a circuit court is lack of a final judgment. A written order cannot speak if it has not been entered. The reasons for this are both obvious and sound. Until a judgment is reduced to writing and certified as accurate by a court, there is a clear risk of lack of notice, ambiguity, and confusion with respect to any such judgment. Indeed, such was apparently the case here where counsel for the parties spent months disputing whether a proposed draft decree accurately reflected the decisions of the circuit court and the objections thereto.

- 4 -

Here, no final decree of divorce was ever entered. The attorneys for the parties could not agree on the contents of a written decree to reflect the circuit court's decision as requested by that court, nor did the parties return to the circuit court seeking direction or clarification if such was deemed necessary in the preparation of the draft final decree.

By May 8, 2020 when Greta passed away, no written order had been entered by the court following the February 27, 2020 divorce hearing, therefore no decree dissolving the marriage existed; instead, it was Greta's death on May 8, 2020, that terminated the marriage. Her death also extinguished the circuit court's subject matter jurisdiction over the divorce suit because a circuit court has no statutory jurisdiction to terminate a non-existent marriage or distribute marital assets except pursuant to Code § 20-107.3(A), which was not invoked in this case.[2] Because any judgment rendered by a court without subject matter jurisdiction is void *ab initio*, here, the circuit court correctly determined it lacked jurisdiction to proceed further with this case.[3] See Nelson, 262 Va. at 281.

---

[2] At oral argument, counsel for Lisa stated that Greta suffered from brain cancer. Notwithstanding wife's apparent illness, the record does not reflect that Greta made any motion—based upon her illness as "good cause"—to bifurcate the parties' divorce from the bonds of matrimony from the equitable distribution of marital property and other issues pursuant to Code § 20-107.3(A).

[3] Lisa argues that, despite Greta's death, the circuit court retained jurisdiction to equitably distribute the marital property. She cites Sprouse v. Griffin, 250 Va. 46 (1995), in support of her position. However, Lisa admits on-brief that, "Sprouse is not directly on point." In Sprouse, a couple sold their marital home while their suit for divorce was pending. Id. at 47. The circuit court ordered the sale proceeds to be held in escrow by the parties' attorneys. Id. Husband died before a divorce decree was entered. Id. at 48. The Supreme Court of Virginia held in Sprouse that the circuit court did not have subject matter jurisdiction to enter a divorce decree after husband's death, but it did retain *in rem* jurisdiction over the escrow fund because the account was specifically created by a court order when it had jurisdiction and was controlled by the court—not the parties. Id. at 50. The written order establishing the escrow fund contained explicit language that expressly retained the circuit court's jurisdiction to dispose of the account that it created. Id. Unlike in Sprouse, here, the circuit court did not exercise *in rem* jurisdiction over any marital property. Moreover, Lisa's argument is undercut by the existence of Code § 20-107.3(A) noted above which provides a mechanism, in an appropriate case, for bifurcation

Further, and for the same reasons noted above, because the marriage terminated prior to a divorce upon Greta's death and the circuit court thereby lost subject matter jurisdiction, this Court is likewise without subject matter jurisdiction to entertain an appeal beyond determining the jurisdictional issue. This Court possesses limited subject matter jurisdiction over final judgments from circuit courts. See de Haan v. de Haan, 54 Va. App. 428, 436 (2009). If the judgment being appealed does not fall within this Court's subject matter jurisdiction, we are without power to review it. See Reaves, 67 Va. App. at 727.

Code § 17.1-405(3)(b) grants this Court jurisdiction over "[a]ny final judgment, order, or decree of a circuit court involving . . . divorce." "A final order or decree for the purposes of Rule 1:1 'is one which disposes of the whole subject, gives all of the relief contemplated . . . and leaves nothing to be done in the cause save to superintend ministerially the execution of the order." Friedman v. Smith, 68 Va. App. 529, 538 (2018) (quoting de Haan, 54 Va. App. at 436-37).

We have previously held that:

> Code § 17.1-405 clearly permits an appeal to this Court from . . . a final order of divorce. And, while our jurisprudence is also clear that the mere fact that an order labeled as "final" is not dispositive of its finality, the plain, obvious, and rational meaning of the statutory language "final decree of divorce" clearly suggests a statutory classification of finality for the purposes of appeal.

Id. at 540.

It is unfortunate that no final decree was timely entered in this case—particularly in view of Greta's illness—but that is exactly what occurred. In the absence of a final order, this Court is without jurisdiction to entertain this appeal beyond affirming the trial court's determination that

---

of the divorce from equitable distribution and other ancillary issues and permits a circuit court to retain jurisdiction for their later disposition. See Friedman v. Smith, 68 Va. App. 529, 539-40 (2018).

- 6 -

it lost jurisdiction upon Greta's death.  See Prizzia v. Prizzia, 45 Va. App. 280, 288 (2005) (holding this Court has jurisdiction to consider only those interlocutory decrees or orders that "adjudicat[e] the principles of a cause").  Because there is no final decree adjudicating the merits entered in this case, this Court lacks subject matter jurisdiction to consider Lisa's second assignment of error or Tommy's request for appellate attorney's fees.

## III.  CONCLUSION

For the above reasons, we hold that the circuit court was correct in concluding that it lacked subject matter jurisdiction to enter a final decree in this case and therefore we also lack subject matter jurisdiction to consider this case further and dismiss this appeal.

Affirmed in part and dismissed.