Present: All the Justices

DARRELL ELMO DAVIS

                   OPINION BY JUSTICE LAWRENCE L. KOONTZ, JR.

v.  Record No. 950757            January 12, 1996

LEONARD C. MULLINS, ET AL.

FROM THE CIRCUIT COURT OF DICKENSON COUNTY
Donald R. Mullins, Judge

This dispute over the boundary line of adjoining parcels of land in Dickenson County has lingered in the courts of the Commonwealth for more than a quarter of a century. To fully understand this case, a recitation of the history of this protracted litigation is necessary. The various pleadings and trial court orders in the record provide the factual background of this appeal. Neither a statement of facts nor transcripts of the various proceedings have been filed by the parties.

The original parties to the dispute were appellees Leonard C. and Pauline Mullins (collectively, the Mullins) and Faye Davis. Faye Davis is the mother and predecessor in interest of appellant Darrell Elmo Davis (Davis). On April 29, 1969, the Mullins filed a motion for judgment pursuant to Code § 8-836 (now Code § 8.01-179) to establish the boundary line between their land and the adjoining land owned by Faye Davis. On July 10, 1969, Faye Davis responded by filing a combined demurrer, motion for bill of particulars, and grounds of defense.

On November 15, 1971, the trial judge at that time,[1] Judge

_____

[1]As recounted later in the opinion, four judges of the Circuit Court of Dickenson County ultimately presided over and entered orders in this litigation. The efficacy of these orders is critical to this appeal.

Glyn R. Phillips, issued an opinion letter recounting the evidence and the view of the property he had taken with counsel. Judge Phillips determined that the Mullins had failed to bear their burden of proof to establish the boundary line and that "the wire fence claimed by [Faye Davis] . . . is the true boundary line between [the parcels in question]." Although the opinion letter concluded with the provision that "[a]n appropriate order may be drafted in accordance with this opinion and presented to the Court for entry," no draft of an order appears in the record of the trial court. Apparently, such an order was never presented to the trial court. In any event, this inexplicable gap in the record is but one of many.

Notwithstanding the November 15, 1971 opinion letter facially resolving the dispute, the next item in the trial court record is a brief filed by the Mullins in support of their motion for judgment. The certificate on this brief indicates that it was mailed to counsel for Faye Davis on November 30, 1971. There is no indication of when it was received by the trial court.

Thereafter, the record is silent until October 19, 1976, when the trial court appointed a surveyor to prepare a survey of the boundary line. On February 17, 1978, the Mullins filed a motion to have evidence taken concerning the survey. That motion was granted and Davis was added as a party to the proceedings by order entered on April 3, 1978. By that order, the trial court also referred the matter to a "Special Commissioner in Chancery" to consider the evidence and submit a recommended decision to the court.

The commissioner filed his report on May 15, 1980. The report, in extensive detail, recounted the history of the parcels from the time of their creation in a grant dividing a single tract of land. The commissioner concluded that the Mullins had failed to satisfy their burden of proof to establish the boundary line and recommended that the trial court's decision be in favor of Faye and Darrell Davis. The Mullins filed exceptions to the commissioner's report and the issues were briefed by the parties. On June 17, 1981, Judge Nicholas E. Persin, at that time the trial judge, issued an opinion letter holding that the report of the commissioner correctly determined the location of the boundary line and directing that a final order be prepared to that effect.

The record contains a notice of intent to submit a final "Decree" for entry on August 19, 1982 at 1:00 p.m. On that day Judge Persin entered an order styled as a "Final Decree" containing a metes and bounds description of the boundary line and a provision for payment of the commissioner's fee. This order was endorsed by counsel for Faye and Darrell Davis, and the circuit court clerk's attestation shows that it was recorded on August 19, 1982 at 4:00 p.m. in deed book 271 at page 318. In addition, however, the order contains a marginal notation that it was inadvertently omitted from microfilm on August 19, 1982 and subsequently microfilmed on February 26, 1991 by order of the trial court.[2] This order (hereafter the 1982 order), as will be

_____
[2]The order also reflects that it was ultimately recorded in the trial court's order book 35 at page 352. Based upon subsequent events and court orders, we assume that this occurred in 1991 when the order was microfilmed.

shown, became the focal point of the subsequent continuing litigation between the parties.

Apparently because the order was not endorsed by counsel for the Mullins and to ensure that the record reflected that counsel was properly advised of the circumstances of its entry, Judge Persin sent a letter to counsel on August 19, 1982, advising that the court had waited until "11:30 a.m." on that day for him to appear to oppose entry of the order. The letter contained the specific admonition that: "If you still oppose entry of the Order you should appear at the Clerk's office immediately and make your motion before the Order is filed." The Mullins' counsel responded on August 23, 1982 by filing a "Motion to Vacate Final Order."

The Mullins asserted in this motion that, although no formal notice had been received, counsel had been informed by telephone by opposing counsel that the order would be submitted in a hearing at 1:30 p.m. on August 19. The motion further asserted that counsel had in turn informed the trial judge by telephone that the Mullins intended to oppose entry of the order at that time, but that the judge had entered the order at 11:30 a.m. on August 19. Although a notice of an August 25, 1982 hearing on the motion to vacate also appears in the record, there is no indication that the hearing took place, nor was an order vacating or suspending the judgment of the 1982 order entered at that time or within 21 days of the entry of the judgment.

Approximately eight months later on April 8, 1983, Judge Persin entered another order styled as a "Final Decree" (hereafter the 1983 order) which purports to dismiss with prejudice the

original motion for judgment on the ground that the Mullins failed to meet their burden of proof as to the location of the disputed boundary line. This order was endorsed by counsel for both parties. Nevertheless, the litigation over this boundary line was not at an end.

On May 9, 1989, Davis instituted a new proceeding by filing a bill of complaint for an injunction and damages, asserting that the Mullins had interfered with his use of his land by cutting the fence and commanding him to abandon the disputed portion of the property. Davis asserted that the 1982 order had established the boundary line between the two parcels, and that the action of the Mullins violated his property rights as established by that order. Judge Donald R. McGlothlin, Jr. granted a temporary injunction on May 10, 1989. That injunction set out the metes and bounds description of the property that appeared in the 1982 order.

On May 23, 1989, the Mullins filed a motion to dismiss Davis' action, asserting that the 1983 order superseded the 1982 order. They further asserted that the 1983 order merely dismissed the original 1969 motion for judgment without establishing a boundary line between the parcels, thus providing no basis for Davis' claims and the injunction.

Subsequently the present trial judge, then presiding in the matter, issued a final order on July 6, 1990 granting a permanent injunction against interference by the Mullins with Davis' use of the property based upon the boundary line established by the 1982 order. The trial judge specifically found that the 1983 order was a nullity because it had been entered after the court had lost

jurisdiction to do so.  The Mullins filed a notice of appeal of this decision, but failed to perfect that appeal.

Again, however, the litigation did not end with this failure to perfect an appeal from the July 6, 1990 order.  Rather, on August 24, 1990, the Mullins filed a motion to reinstate the original proceeding arising out of their April 29, 1969 motion for judgment seeking an order nunc pro tunc to vacate the 1982 order.  Thereafter on February 18, 1992, Judge Persin ordered the matter reinstated and, nunc pro tunc, vacated the 1982 order in favor of the 1983 order.  Counsel for Davis objected but did not appeal this decision.

Armed with Judge Persin's February 18, 1992 order, the Mullins then filed a motion dated April 3, 1992 to dissolve the prior injunction granted in favor of Davis on July 6, 1990.  They asserted that "[w]ithout the requisite [1982 order], there is no basis for the continuation of the injunctive relief entered in this cause . . . ."

By final order entered on January 30, 1995, the present trial judge, specifically referencing Judge Persin's February 18, 1992 order, determined that the 1982 order was void, the 1983 order was valid, and consequently there was no basis for the court's prior injunction entered on July 6, 1990.  Accordingly, the injunction was dissolved.  The order further directed that the record of the original 1969 action be made a part of the record of the 1989 action for purposes of appeal.  We awarded Davis an appeal from the trial court's January 30, 1995 order.

The crux of the issue on appeal is the validity of the 1982

order and the power of the court to modify it by vacating it in 1992. We must first consider whether the order was in fact valid despite the lack of an endorsement by the Mullins' counsel. Rule 1:13 provided in 1982, as it does today, as follows:

> Drafts of orders and decrees shall be endorsed by counsel of record, or reasonable notice of the time and place of presenting such drafts together with copies thereof shall be served by delivering or mailing to all counsel of record who have not endorsed them. Compliance with this rule . . . may be modified or dispensed with by the court in its discretion.

This rule is designed to protect parties without notice. State Hwy. Comm'r v. Easley, 215 Va. 197, 201, 207 S.E.2d 870, 873 (1974). However, the mere fact that an order may have been entered without endorsement of counsel of record does not automatically render it void. The last sentence of Rule 1:13 authorizes the trial court in its discretion to modify or dispense with the requirement of endorsement of counsel. Thus, we have held that endorsement of counsel is unnecessary under circumstances where "counsel are present in court when the ruling is made orally and are fully aware of the court's decision; preparation and entry of an order in standard form is all that remains to be done to end the case in the trial court." Smith v. Stanaway, 242 Va. 286, 289, 410 S.E.2d 610, 612 (1991).

Here, the record shows that the Mullins' counsel was fully aware of the court's decision through its opinion letter and that opposing counsel had been directed to prepare an order consistent with that decision for entry. All that remained to be done was the preparation and entry of the order to end the case in the trial court. Moreover, counsel was aware that such an order would

be presented for entry on August 19, and he communicated to the court his objection to the order the day before its entry.

Concededly, the time of day at which the order was to be presented for entry on August 19 was the subject of confusion or misunderstanding between counsel. Nonetheless, the record is clear that the trial court was aware of these circumstances and counsel's objection to the order. Consequently, exercising its discretion to dispense with the requirements of counsel's endorsement, the court promptly informed counsel of its action and provided him with an ample opportunity to make an objection. Indeed, counsel acted to make such objection by filing a motion to vacate well within the time period that the court entertained jurisdiction over the matter. Accordingly, under the circumstances of this particular case, the order was properly entered by the trial court.

Having determined that the 1982 order was valid under Rule 1:13, we now consider the effect of counsel's motion to vacate that order. It is the firmly established law of this Commonwealth that a trial court speaks only through its written orders. Cunningham v. Smith, 205 Va. 205, 208, 135 S.E.2d 770, 773 (1964). Furthermore, "orders speak as of the day they were entered," Vick v. Commonwealth, 201 Va. 474, 476, 111 S.E.2d 824, 826 (1960), and an order of the court becomes final 21 days after its entry unless vacated or suspended by the court during that time. Rule 1:1.

> Neither the filing of post-trial or post-judgment motions, nor the court's taking such motions under consideration, nor the pendency of such motions on the twenty-first day after final judgment is sufficient to

> toll or extend the running of the 21-day period prescribed by Rule 1:1 . . . . The running of time under [Rule 1:1] may be interrupted only by the entry, within the 21-day period after final judgment, of an order suspending or vacating the final order.

School Bd. of Lynchburg v. Caudill Rowlett Scott, Inc., 237 Va. 550, 556, 379 S.E.2d 319, 323 (1989) (citations omitted).

No order suspending or vacating the 1982 order within 21 days of its entry appears in the record. Accordingly, that order became final on September 9, 1982. After that date, the trial court, pursuant to Rule 1:1, was divested of jurisdiction and every action of the court thereafter to alter or vacate that order, including the entry of the 1983 order, was a nullity unless one of the limited exceptions to the preclusive effect of Rule 1:1 applies.

One such exception is provided by Code § 8.01-428(B) which permits the trial court to correct at any time "[c]lerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission." Code § 8.01-428(B); see also Lamb v. Commonwealth, 222 Va. 161, 165, 279 S.E.2d 389, 392 (1981). In addition, in Council v. Commonwealth, 198 Va. 288, 292, 94 S.E.2d 245, 248 (1956), we adopted the majority view that the trial court has the inherent power, independent of statutory authority, to correct errors in the record so as to cause its acts and proceedings to be set forth correctly. In short, the court has the inherent power, independent of the statute, upon any competent evidence, to make the record "speak the truth." Netzer v. Reynolds, 231 Va. 444, 449, 345 S.E.2d 291, 294 (1986).

When acting *nunc pro tunc*, the court does not reacquire jurisdiction over the case. See *Dixon v. Pugh*, 244 Va. 539, 543, 423 S.E.2d 169, 171 (1992). Rather, the trial court merely corrects the record by entry of an order *nunc pro tunc*, under the accepted fiction that the order relates back to the date of the original action of the court "now for then." Nonetheless, we have carefully noted that "[t]he power to amend should not be confounded with the power to create. While the power is inherent in the court, it is restricted to placing upon the record evidence of judicial action which has actually been taken, and presupposes action taken at the proper time." *Council*, 198 Va. at 292, 94 S.E.2d at 248 (citation omitted). Similarly, the statutory power granted by Code § 8.01-428 is to be narrowly construed and applied. *McEwen Lumber Co. v. Lipscomb Bros. Lumber Co.*, 234 Va. 243, 247, 360 S.E.2d 845, 848 (1987).

To permit a trial court, either under the statute or by its inherent power, to consider at any time what judgment it might have rendered while it still retained jurisdiction over a case and then to enter that judgment *nunc pro tunc* would render meaningless the mandate of Rule 1:1 and would do great harm to the certainty and stability that the finality of judgments brings. Thus, without competent evidence that the trial court actually attempted timely to vacate the 1982 order and failed to do so only by error, oversight or omission, the finality of that order could not be vacated *nunc pro tunc*.

Here, the record does not contain an order vacating the 1982 order within 21 days of its entry and is devoid of competent

evidence that the trial court attempted to enter such an order while it retained jurisdiction over the matter. Similarly, the record is devoid of competent evidence that the Mullins timely pursued the entry of an order, pursuant to their motion, to vacate the 1982 order. While the delay in recording that order and the subsequent proceeding before the trial court in 1983 may suggest that the parties and the court treated the 1982 order as having been vacated, nothing in the record suggests that an order doing so was in fact entered. Accordingly, the 1983 order was a nullity, and the February 18, 1992 order was issued in error, the court having no authority to enter the latter order <u>nunc</u> <u>pro</u> <u>tunc</u>. As a result, the January 30, 1995 order dissolving the injunction on the basis of the February 18, 1992 order was also issued in error, as the July 6, 1990 injunction to enforce the provision of the 1982 order was properly granted.

In summary, we hold that the 1982 order remains valid and established the boundary line between the parties' property, and Davis is entitled to the protection of the July 6, 1990 injunction enforcing the effect of the 1982 order. Thus we will reverse the trial court's January 30, 1995 decree, reinstate the injunction, and enter final judgment in favor of Davis.

<u>Reversed and final judgment</u>.