COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Clements and Kelsey
Argued at Salem, Virginia


MATTHEW THOMAS ZIATS, SOMETIMES KNOWN AS
 THOMAS MATTHEW ZIATS
                                                            OPINION BY
v.        Record No. 1748-02-3              JUDGE ROSEMARIE ANNZIATA
                                                          DECEMBER 30, 2003
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
Keary R. Williams, Judge

Michael L. Dennis (Dudley, Galumbeck, Necessary and Dennis,
on brief), for appellant.

Margaret W. Reed, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Thomas Matthew Ziats was sentenced to 10 years incarceration for statutory burglary and

larceny.  The trial court suspended the entire sentence subject to supervised probation and good

behavior.  Ziats was subsequently convicted of shoplifting.  The court, upon considering the

probation violation, revoked Ziats's suspended sentence by order dated June 18, 2001.  A

subsequent amended sentencing order was entered on June 7, 2002.  Ziats contends the trial court

did not have jurisdiction to enter the amended order on June 7, 2002.  We agree and reverse the

decision of the trial court.

I.  Background

On appeal, we review the evidence in the light most favorable to the Commonwealth,

granting it all reasonable inferences deducible from that evidence.  Commonwealth v. Grimstead,

12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  The evidence establishes that, on October 8,

1998, Thomas Matthew Ziats was sentenced to 10 years incarceration for statutory burglary and

grand larceny. The entire sentence was suspended, and Ziats was placed on supervised probation on condition that he be of good behavior. Ziats subsequently was convicted of shoplifting. On May 23, 2001, Ziats admitted he violated the terms of his probation and the court revoked the suspension of his ten-year sentence by order dated June 18, 2001. The court also "ORDERED that the defendant be placed in a drug rehabilitation program within the Department of Corrections" pursuant to Code § 18.2-254(B).[1] Upon a subsequent motion filed by Ziats, the court entered an amended order on July 9, 2001 that, again, ordered Ziats into a drug rehabilitation program. It also stated that, upon successful completion of the program, Ziats was to return before the court for a review of his sentence. By order dated the same day, the trial judge denied Ziats's motion to suspend all or a part of his ten-year sentence.

The Department of Corrections (DOC) refused to accept the July 9, 2001 order as drafted. In response, the court, upon its own motion and without notice to the parties, entered an amended order dated September 14, 2001 that deleted the provision regarding judicial review of Ziats's sentence upon successful completion of a rehabilitation program. Ziats subsequently objected to the revised order and requested an amended order that would allow the court to review his sentence after completion of the program. The court entered an order on October 4, 2001 that affirmed the directives of the July 9, 2001 order and that allowed Ziats "all the benefits" of Code § 18.2-254.

---

[1] The relevant portion of Code § 18.2-254(B) provides:

> Upon presentation of a certified statement from the director of the treatment facility to the effect that the confined person has successfully responded to treatment, the court may release such confined person prior to the termination of the period of time for which such person was confined and may suspend the remainder of the term upon such conditions as the court may prescribe.

On June 7, 2002, Ziats presented the court with an order that tracked the language of Code § 18.2-254(B). It provided that "upon presentation of a certified statement . . . that the confined person has successfully responded to treatment, the defendant shall be returned to this court in the custody of the Sheriff of this County for further consideration as set forth in section 18.2-254(B)." The amended order was signed by the Commonwealth and Ziats's counsel. The order was rejected by the DOC. The court, again on its own motion and without notice to either party, recalled the order and destroyed it.

In its stead, the court issued an order, also dated June 7, 2002, that made no reference to Code § 18.2-254. It simply recommended that Ziats "be considered for placement in the Therapeutic Community Program within the Department of Corrections." The order was entered "*nunc pro tunc* for the 18th day of June, 2001." The second June 7, 2002 order is the subject of this appeal.

Ziats argues that the trial court did not have jurisdiction to enter an order on June 7, 2002 to modify its previous order of July 9, 2001, which provided for a review of his sentence, because the July 9, 2001 order was final under Rule 1:1. He contends the June 7, 2002 order was therefore void. Ziats also argues that the court abused its discretion by: 1) destroying the first June 7, 2002 order, 2) entering the second June 7, 2002 order without notice, and 3) denying Ziats an opportunity to be heard before entering orders that materially affected his rights. That twenty-one days had elapsed since the July 9, 2001 order and before entry of the June 7, 2002 order is not in dispute.

The Commonwealth raises two arguments in response to Ziats's contention that the court had no jurisdiction to enter the June 7, 2002 order. First, the Commonwealth relies on Code § 19.2-303 and argues the trial court had jurisdiction on June 7, 2002 to modify the sentence because the defendant was not in the custody of the DOC. Second, the Commonwealth argues

- 3 -

that the court's June 7, 2002 order was valid *nunc pro tunc* to June 18, 2001 because it corrected erroneous language regarding the drug rehabilitation program reference appearing in the previous amended orders of July 9, 2001, September 14, 2001, and October 4, 2001. The Commonwealth also contends that the court did not have to provide notice to Ziats before amending the sentencing orders because the orders did not modify his sentence.

We agree with Ziats that the July 9, 2001 order was final and that the trial court did not have jurisdiction to enter the June 7, 2002 order. We therefore reverse the decision, remand this matter to the trial court, and direct that it vacate the June 7, 2002 order.

II. Analysis

A. The Validity of the June 7, 2002 Is Not Governed by Code § 19.2-303

In response to Ziats's challenge to the June 7, 2002 order, the Commonwealth argues that the trial court had authority to enter the order pursuant to Code § 19.2-303. This contention is without merit.

Rule 1:1 of the Rules of the Supreme Court of Virginia provides that a trial court may modify, vacate, or suspend all judgments, orders, and decrees within twenty-one days of the date of entry, *but no longer*. Expiration of the twenty-one day time limitation divests the trial court of jurisdiction. See Virginia Dept. of Corr. v. Crowley, 227 Va. 254, 260, 264, 316 S.E.2d 439, 442, 444 (1984). Orders entered in violation of Rule 1:1 are void. Smith v. Commonwealth, 32 Va. App. 766, 775, 531 S.E.2d 11, 16 (2002).

Rule 1:1 is subject to certain limited exceptions, however. Davis v. Mullins, 251 Va. 141, 149, 466 S.E.2d 90, 94 (1996); Decker v. Decker, 22 Va. App. 486, 494, 471 S.E.2d 775, 779 (1996). Code § 19.2-303 is one of those exceptions. It provides that

> [i]f a person has been sentenced for a felony . . . the court which
> heard the case, if it appears compatible with the public interest and
> there are circumstances in mitigation of the offense, may, at any
> time before the person is transferred to the Department [of

- 4 -

> Corrections], suspend or otherwise modify the unserved portion of
> such a sentence.

Code § 19.2-303. Once the defendant has been transferred to the DOC and twenty-one days have passed since the court's last order, the court can no longer modify a sentence. Rule 1:1; D'Alessandro v. Commonwealth, 15 Va. App. 163, 168, 423 S.E.2d 199, 202 (1992); see also In re Commonwealth, Dep't of Corr., 222 Va. 454, 463, 281 S.E.2d 857, 862 (1981).

Whether Ziats was in the custody of the local sheriff, and not in the custody of the DOC, when the court entered the June 7, 2002 order is a question of fact which we review in the light most favorable to the Commonwealth. Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997). A trial court's factual determinations are binding on appeal unless plainly wrong. Naulty v. Commonwealth, 2 Va. App. 523, 527, 346 S.E.2d 540, 542 (1986).

The evidence, viewed in the light most favorable to the Commonwealth, fails to support its contention that Ziats had not been transferred to the DOC. First, the record is silent on Ziats's location on June 7, 2002, with the exception of one reference in Ziats's motion to vacate the June 7, 2002 order. In this motion, Ziats's counsel requested the "return [of] the Defendant to the custody of the Sheriff of Tazewell County where the Defendant shall be held until such time as the Defendant can be brought before this Court to appear and be heard in this matter." Contrary to the Commonwealth's contention, and even viewing the evidence in the light most favorable to the Commonwealth, the motion does not establish that Ziats was in local custody on June 7, 2002. Faced with a silent record, we cannot say that the trial court had jurisdiction to modify the July 9, 2001 order on June 7, 2002. See D'Alessandro, 15 Va. App. at 167, 423 S.E.2d at 201 (declining to find that the trial court had jurisdiction to modify a sentencing order under Code § 19.2-303 where the record was silent on the defendant's custodial location).

B.  The June 7, 2002 Order Was Not a Proper Exercise of the Court's *Nunc Pro Tunc* Power

The Commonwealth also argues that the trial court's June 7, 2002 order was a valid *nunc pro tunc* order, placing it beyond the parameters of Rule 1:1.  We find this argument is likewise without merit.

We apply an abuse of discretion standard to evaluate whether the trial court entered a valid *nunc pro tunc* order.  See Harris v. Commonwealth, 222 Va. 205, 209, 279 S.E.2d 395, 398 (1981); Dickenson County v. West Dante Supply Co., 145 Va. 513, 518, 134 S.E. 552, 553 (1926).  A trial court may exercise its *nunc pro tunc* power only to "correct errors in the record so as to cause its acts and proceedings to be set forth correctly."  Davis, 251 Va. at 149, 466 S.E.2d at 94; see also Code § 8.01-428(B).  "When acting *nunc pro tunc*, the court does not reacquire jurisdiction over the case."  Davis, 251 Va. at 149, 466 S.E.2d at 94.  Thus, the "power to amend . . . must not be confounded with the power to create."  Gagnon v. United States, 193 U.S. 451, 457 (1904); Council v. Commonwealth, 198 Va. 288, 292, 94 S.E.2d 245, 248 (1956).  "Under the rule the . . . *nunc pro tunc* entry should not be made . . . to show what the court should have done as distinguished from what actually occurred.  The court's authority . . . extends no further than the power to make the record entry speak the truth."  Id.  It is clear, therefore, that the *nunc pro tunc* power is reserved for the correction of clerical error only.  Id.  Any other rule "would render meaningless the mandate of Rule 1:1 and would do great harm to the certainty and stability that the finality of judgments brings."  Davis, 251 Va. at 150, 466 S.E.2d at 94.

Here, the trial judge issued an order dated June 7, 2002, and he directed that the order be entered "*nunc pro tunc* for the 18th day of June, 2001."  The entry of the June 7, 2002 *nunc pro tunc* order presumes that the June 18, 2001 order contained clerical errors that did not correctly reflect the court's acts and proceedings on that day.  The record fails to disclose, however, any

evidence of error in the June 18, 2001 order.  "The purpose of a *nunc pro tunc* entry is to correct mistakes of the clerk or other court officials, or to settle defects or omissions in the record so as to make the record show what actually took place."  Council, 198 Va. at 293, 94 S.E.2d at 248. The trial court therefore abused its discretion by entering an order *nunc pro tunc* to correct an error that never existed.  "It is not the function of such entry by a fiction to antedate the actual performance of an act which never occurred, to represent an event as occurring at a date prior to the time of the actual event, 'or to make the record show that which never existed.'"  Id. (quoting 21 C.J.S. Courts § 227(a)).

### III.  Conclusion

We find that Ziats proved that twenty-one days had passed since the entry of the July 9, 2001 order.  Therefore, the July 9, 2001 order was final.  Because the Commonwealth failed to establish that Ziats was in local custody on June 7, 2002, the trial court did not have the authority to amend the July 9, 2001 order on June 7, 2002 pursuant to Code § 19.2-303.  Furthermore, the trial court improperly exercised its *nunc pro tunc* powers by entering the June 7, 2002 order. The June 7, 2002 order is therefore void.

Because we hold that the trial court did not have jurisdiction to enter the June 7, 2002 order and that the order dated July 9, 2001 is final, we need not reach Ziats's other contentions. We reverse and remand this matter to the trial court with directions that it vacate the June 7, 2002 order.

Reversed and remanded.