COURT OF APPEALS OF VIRGINIA


Present:   Judges McClanahan, Haley and Senior Judge Willis


SHANINA R. HORSLEY

                                                      MEMORANDUM OPINION[*]
v.        Record No. 1004-09-3                              PER CURIAM
                                                         DECEMBER 1, 2009
LYNCHBURG DIVISION OF SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                              J. Leyburn Mosby, Jr., Judge

            (David E. Mass, on briefs), for appellant.  Appellant submitting on
            briefs.

            (Joyce M. Coleman; Dion F. Richardson, Guardian *ad litem* for the
            minor children, on brief), for appellee.  Appellee and Guardian *ad
            litem* submitting on brief.


        Shanina R. Horsley (mother) appeals the decision of the circuit court terminating her

parental rights to her children, S. and Z.  She contends the trial court erred in failing to adequately

consider continued foster care as an alternative to termination and misapplied the law relating to

termination.  We disagree and affirm the trial court.

                                          BACKGROUND

        On appeal, we view the evidence and all reasonable inferences in the light most favorable

to appellee as the party prevailing below.  McGuire v. McGuire, 10 Va. App. 248, 250, 391

S.E.2d 344, 346 (1990).  So viewed, the evidence showed that the Lynchburg Division of Social

Services (LDSS) became involved with mother and her children on March 6, 2007.  At the time,

someone contacted police and reported that S., two years old at the time, was alone in the middle

of the street and was almost hit by a car, and Z., then five, was unattended on the sidewalk.

―――――――――――――――

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Mother was in a laundromat at the time. When mother finally appeared, she cursed S. and jerked him up by the wrists.

Instead of removing the children, LDSS entered into two safety plans with mother and one with the maternal grandmother and referred mother and the children for services. On March 22, 2007, S. was severely burned while under mother's care and had to be hospitalized. A nurse saw mother hit S. at the hospital while he was being prepared to be transported to a burn center. Mother and grandmother gave inconsistent accounts of how S. was burned. As a result of the incident, LDSS removed S. from mother and placed him in foster care.

LDSS evaluated and provided services to mother and the children following the removal.

On October 1, 2008, nineteen months after the children were removed, LDSS filed petitions to terminate mother's residual parental rights pursuant to Code § 16.1-283. On October 31, 2008, the juvenile and domestic relations district court granted the termination petitions. Mother appealed, and on February 25, 2009, the trial court heard evidence.

Dr. Andrew James Anderson conducted a psychological evaluation of mother. He determined mother's IQ to be 69, placing her in the lower 2% of subjects in her age group. Dr. Anderson described mother as passive-aggressive, narcissistic and paranoid, and opined that her personality was such that she blames the children or others for her parenting shortcomings. In addition, she suffers from generalized anxiety disorder. Dr. Anderson felt her refusal to acknowledge any problems or fault would prevent her from being able to apply the skills LDSS tried to offer her and keep the children safe and healthy. He further noted that mother performed extremely poorly in a parenting skills assessment, suggesting a risk of family dysfunction, child abuse, and neglect. Dr. Anderson opined that continued services and intervention would not improve mother's parental functioning sufficiently for her to safely and independently rear the children.

Ashley Bryant worked with mother as a parenting instructor two hours each week for thirteen months. Bryant observed mother interact with the children, after which she would meet with mother to instruct her how to be more positive, patient, and consistent with the children. Bryant testified that mother did not accept responsibility for creating the danger to the children, and she opined that mother reached a minimal level of progress from which she would likely not improve further. Moreover, mother indicated to Bryant she could stop using drugs in order to regain custody of the children, but said she would probably start back after their return.

Mary Rice, a licensed counselor, began counseling mother on November 8, 2007, and worked with her once a week for fifteen months. Rice was concerned with mother's depression, anger management, mood swings, and substance abuse. Although mother has made progress in her depression and anger, she still struggles with those issues. Because mother was not able to understand or acknowledge her role in the children being removed, Rice did not think mother could adequately and safely care for the children.

Social worker Elizabeth Meeks worked with mother's case for nineteen months, from April 2007 until October 2008. Initially, Z. had educational and emotional issues as did S., who was born premature and who exhibited developmental delays. Both children have demonstrated marked improvement in emotional, social, and academic areas with their foster families, and social worker Kelsey Hammitt testified as such. Meeks described the following services provided to mother:

> [She was offered] a psychological evaluation, a psychiatric
> evaluation . . . , crisis intervention with Mary Rice, medication
> management through Johnson's family Health Center, therapy for
> two hours per week with Rice Family Counseling, one-on-one
> parenting instruction two hours per week with Family Preservation
> Services, parenting classes through the CSB, and attachment
> assessment with Z. at Arise Orientation at the Courtland center,
> intensive outpatient class[es], substance abuse classes at the
> Courtland Center, random drug screens, she was referred to
> Narcotics Anonymous and Alcoholics Anonymous, she was

offered monthly bus passes, and we also paid for three sets of anger management classes and continuing-care substance abuse classes.

During the period mother received services, she tested positive for or admitted to use of marijuana in September 2007, March 2008, April 2008, twice in May 2008, and June 2008. Several relatives petitioned for custody of the children, but all were denied. Meeks explained that she petitioned for termination in October 2008 because she felt that mother would not be able to meet the needs of her children or keep them safe.

After hearing the evidence, the trial court found that LDSS established by clear and convincing evidence grounds to terminate mother's residual parental rights under Code § 16.1-283(B) and 16.1-283(C). It included both bases for termination in its final order.

DISCUSSION

Mother argues that: (A) the trial court failed "to give adequate consideration to continued foster care" and it "incorrectly applied the law to its factual findings," and (B) the trial court's oral statements should prevail over the written findings set forth in its final orders.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). Where the trial judge hears the evidence *ore tenus,* his decision is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it. See Lowe v. Dep't of Pub. Welfare, 231 Va. 277, 282, 343 S.E.2d 70, 73 (1986).

A termination of rights pursuant to Code § 16.1-283(B) requires the trial court to find by clear and convincing evidence that termination was in the child's best interests and

1.  The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and

2.  It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time.

Pursuant to Code § 16.1-283(B)(2)(a), proof that the parent is suffering from a "mental deficiency of such severity that there is no reasonable expectation that such parent will be able to undertake responsibility for the care needed by the child in accordance with his age and stage of development" constitutes prima facie evidence of the conditions set forth in Code § 16.1-283(B)(2).

Termination pursuant to Code § 16.1-283(C)(2) requires proof that the parent,

> without good cause, ha[s] been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies.

### A. Failure to Give Adequate Consideration to Continued Foster Care

Mother claims the trial court incorrectly applied the statutes and committed reversible error by failing to consider continued foster care placement while mother continued to receive services.

Contrary to mother's assertion, the record showed that the trial court considered continued foster care placement, but it found, based on the evidence, that mother would not be able to remedy the conditions that endangered the children and adequately and safely care for them within a reasonable period of time.

In her argument, mother cited two cases she claimed were distinguishable from her case, however, she cited no case law in support of her argument that the trial court incorrectly applied the law by failing to continue the children in foster care.

Viewed in the light most favorable to LDSS, the prevailing party, the evidence clearly and convincingly proved that mother is "suffering from a . . . mental deficiency of such severity that there is no reasonable expectation that [she] will be able to undertake responsibility for the care needed by [the children] in accordance with [their] age and stage of development," Code § 16.1-283(B)(2)(a), and she has "been unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies," Code § 16.1-283(C)(2).

The children were in foster care for nineteen months before LDSS filed its petitions for termination during which time mother received extensive services. Expert evidence demonstrated that mother had intellectual, social, and psychological problems that limited her ability to understand how her past conduct negatively affected the children and those limitations would likely not be overcome with continued services. Moreover, the children had educational, social, and emotional problems and special needs that mother was unable to recognize and address, now or in the future.

LDSS presented sufficient clear and convincing evidence to support the trial court's findings and rulings. Therefore, the evidentiary requirements of Code § 16.1-283(B)(2) and (C) have been met, and the trial court's findings and judgment were not plainly wrong or without evidence to support them.

B. The Trial Court's Written Orders Should Be No Bar to Mother's Relief

Mother argues that the trial court's oral statement that the law says that it is in the best interests of the children "not to have these things drag out and delay decisions for the children's best interest, more than thirteen months" should supersede its findings in its final written order. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming [her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

"It is the firmly established law of this Commonwealth that a trial court speaks only through its written orders." Davis v. Mullins, 251 Va. 141, 148, 466 S.E.2d 90, 94 (1996). In its final written order granting the termination petitions, the trial court found sufficient evidence to terminate under Code § 16.1-283(B) and (C).

Here, the children were in foster care and mother received services for nineteen months before LDSS filed the termination petitions, six months longer than the thirteen-month period mother claimed the trial court relied upon. Moreover, after the court's statement about thirteen months, it found the children were properly removed due to abuse and neglect, they have flourished in foster care, and expert testimony proved that mother "won't ever have the capacity to" safely and responsibly parent the children. The evidence supports those findings. Accordingly, the final order did not conflict with nor was it contrary to the trial court's oral findings.

Accordingly, the decision of the trial court is affirmed.

Affirmed.