UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Alston, Chafin and Senior Judge Haley


JASMINE HARPER

MEMORANDUM OPINION*
v.      Record No. 2237-14-4                                  PER CURIAM
                                                             JUNE 23, 2015
ALEXANDRIA DEPARTMENT OF
 COMMUNITY AND HUMAN SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
James C. Clark, Judge

(Sameena Sabir, on brief), for appellant.

(Jonathan D. Westreich, Special Counsel to the Alexandria
Department of Community and Human Services; James L.
Banks, Jr., City Attorney; Jill A. Schaub, Senior Assistant City
Attorney, on brief), for appellee.

(Isabel Kaldenbach, on brief), Guardian *ad litem* for the minor
children.


Jasmine Harper, mother, appeals a decision of the trial court terminating her parental rights

to her minor children, Y.H, and M.N., pursuant to Code § 16.1-283(B)(2) and 16.1-283(C)(2).  On

appeal, mother contends the trial court erred in finding (1) the Alexandria Department of

Community and Human Services (DCHS) provided reasonable services to her; (2) "the children

were better off in foster care than at home or with relatives;" (3) there were no available relative

placements; and (4) DCHS provided appropriate services to her.  Upon reviewing the record and

briefs of the parties, we conclude this appeal is without merit.  Accordingly, we summarily affirm

the decision of the trial court.  See Rule 5A:27.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On appeal, we view the evidence in the "'light most favorable' to the prevailing party in the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible therefrom.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005) (quoting Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)). When reviewing a decision to terminate parental rights, we presume the circuit court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Id. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "The trial court's judgment, 'when based on evidence heard ore tenus, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted)). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

The evidence showed the children were removed from mother's custody in June 2013 on the basis that one of the children had several injuries, mother was alleged to have brandished a knife in the home, and there were allegations of substance abuse in the home. The children were twenty-two months and eleven months old at the time of the removal. On June 28, 2013, the juvenile and domestic relations district court (the JDR court) found both children were abused and neglected. Evidence was presented that mother had threatened to "f-up" one of the children, she brandished a knife and threatened to kill the children, and she caused a severe friction burn to one of the children. When they were removed from the home, both children had such severe diaper rash they required medical treatment.

On October 29, 2013, a Diagnostic Family Assessment (the DFA) was conducted. During the DFA, mother often deferred to her mother, Lilly Grant. Mother frequently did not answer questions directed to her or she repeated what Grant said. The DFA identified mother's inability to exercise independent decision making and her inability to consistently understand the safety needs of the children. The DFA further showed mother had intellectual instability, generalized anxiety disorder, and a depressive feature. She had limited insight into her own cognitive impairment. A psychologist testified it would be "very difficult" for her to independently parent the children. He stated mother had a high probability of developing substance dependence.

DCHS offered mother numerous services, including counseling, family engagement services, parenting classes, and mental health evaluations. According to the initial foster care service plan, in order to accomplish the goal of return to home, mother was required to obtain employment, demonstrate an understanding of the needs of the children, attend medical appointments and supervised visitation, demonstrate an ability to keep the children from harm, address her mental health issues, remain substance free, and demonstrate an ability to independently parent the children.

On February 20, 2014, the JDR court held a hearing to assess mother's progress toward accomplishing a goal of returning the children to the home. Although mother had attended parenting classes and was compliant with services, she was still not able to demonstrate independent parenting skills. A social worker testified mother "had a lot of trouble maintaining emotional stability" and she was "easily overwhelmed" at the visitations with the children. She was unable to maintain control over the children or keep the children safe for the brief supervised visitation time periods. Mother occasionally demonstrated a lack of control during the visits and inappropriately shouted at the children.

Mother asserts the trial court erred in finding DCHS provided reasonable and appropriate services to her. See Code § 16.1-283(C)(2). She also contends the trial court erred in terminating her parental rights where she completed all designated services.

As stated above, mother participated in many of the services recommended by DCHS, including attending supervised visitation with the children. However, the termination of parental rights pursuant to Code § 16.1-283(C) "requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services." Toms, 46 Va. App. at 271, 616 S.E.2d at 772.

By November 5, 2014, the date of the trial court hearing and seventeen months since the children were removed from the home, mother was unemployed and she still had not shown an ability to parent the children. A social worker testified mother had improved with her weekly one-hour visits with the children, however, she had not demonstrated a capability to parent the children for longer than one hour. Mother has cognitive limitations and emotional instability issues that had not improved. She was also pregnant with a third child, and evidence was presented that this child was "medically fragile" and would require surgery at birth. Mother also continued to reside with her own mother, Grant. The social worker testified Grant did not feel mother has any issues and Grant did not appear to recognize mother's inability to safely parent the children.

The evidence showed that mother threatened to commit suicide in the fall of 2014 and she demonstrated a lack of impulse control. When asked why the children went into foster care, mother replied, "They said that . . . I neglected my kids and I couldn't meet my kids' needs." She then stated she had learned to pay close attention to what the children were doing. Mother testified that when she made the video recording of herself holding a knife in front of the children she was feeling "very frustrated dealing" with the father of one of the children. A psychologist testified that

- 4 -

mother's cognitive limitations, combined with her psychological condition, made it difficult for her to put into practice the skills needed to safely parent the children.

The children had been in foster care for seventeen months at the time of the trial court hearing. They were only two and three years old. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his or [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Although mother participated in the services offered by DCHS, she did not demonstrate an ability to safely parent the children. Thus, from the evidence presented, the trial court could conclude mother had been unwilling or unable to remedy the problems that resulted in the removal of the children. Accordingly, the trial court did not err in terminating mother's parental rights pursuant to Code § 16.1-283(C)(2).

Mother argues the trial court erred in failing to find that termination was in the best interests of the children. However, the November 5, 2014 trial court orders terminating mother's parental rights state that the termination is in the best interests of the children. A trial court speaks through its orders. Davis v. Mullins, 251 Va. 141, 148, 466 S.E.2d 90, 94 (1996).

In determining what is in the best interests of a child, this Court has stated:

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

Both children suffered from numerous medical conditions at the time of removal. They also had developmental delays, and one child had a facial injury. A social worker testified the children were initially "totally uncontrollable" and they have been placed in three different foster homes.

However, at the time of the trial court hearing, the children were doing well in foster care. One child attends pre-school. One of the children has markedly improved in speech therapy and is learning well. The other child has become more verbal and outgoing. A Court Appointed Child Advocate (CASA) testified the structure and discipline of the foster home is having a positive effect on his behavior. Both children had sometimes regressed at visitation with mother. CASA reported that one child had extensive therapy and was making progress with his temper tantrums.

The evidence showed mother is unable to provide the children with a stable home and the care necessary to meet their needs. The children are doing well in foster care. Accordingly, the trial court did not abuse its discretion in finding termination of her parental rights was in the best interests of the children.

Mother asserts the trial court erred in finding there were no suitable relative placements for the children. The record shows DCHS first inquired about placing the children with a maternal aunt. However, the aunt failed to follow through with the social worker and she did not attend any of the court hearings on the matter. A social worker testified that no other relatives had been identified or come forward.

DCHS also investigated the possibility of placing the children with the maternal grandmother, Grant, with whom the children resided before their removal and during the time when they suffered from neglect and abuse. DCHS offered Grant parental training and offered to complete a home study regarding her residence. However, Grant did not complete the requisite home study paperwork for three months. DCHS eventually completed the home study, and it recommended against placing the children in Grant's home. The DFA indicated Grant did not accept mother's intellectual limitations and her inability to safely parent the children. Grant testified she did not have any concerns about mother's ability to care for the children. She testified mother "seems to take care of them very well. The only thing that is going on with her now is being

pregnant." Grant stated the only thing that was different in the home since the removal of the children was mother's pregnancy and that mother planned to relocate when the baby is born. Furthermore, Grant minimized the injuries mother caused to the children.

The evidence showed DCHS investigated relative placement and found no suitable relative placement for the children. DCHS does not have the duty "in every case to investigate the home of every relative of the children, however remote, as a potential placement." Sauer v. Franklin Cnty. Dep't of Soc. Servs., 18 Va. App. 769, 771, 446 S.E.2d 640, 642 (1994). The duty to investigate is a rule of reason dependent upon the particular facts and circumstances of each individual case. "As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999). Accordingly, mother's argument is without merit.

In her conclusion, mother also asserts the trial court erred in terminating her parental rights pursuant to Code § 16.1-283(B). When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the circuit court, and if so, we need not address the other grounds. See Fields, 46 Va. App. at 8, 614 S.E.2d at 659 (termination of parental rights upheld under one subsection of Code § 16.1-283 forecloses need to consider termination under alternative subsections). Therefore, we will not consider whether the trial court erred in terminating mother's parental rights to the children pursuant to Code § 16.1-283(B).

Clear and convincing evidence proved that termination of mother's parental rights was in the best interests of the children. Therefore, we summarily affirm the decision of the trial court.

Affirmed.