COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Fulton and White
Argued at Norfolk, Virginia


JASON J. BRAYDEN

MEMORANDUM OPINION* BY
v.        Record No. 0500-22-1                    JUDGE KIMBERLEY SLAYTON WHITE
                                                           APRIL 4, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Bonnie L. Jones, Judge

Charles E. Haden for appellant.

Lucille M. Wall, Assistant Attorney General (Jason S. Miyares,
Attorney General; Robin M. Nagel, Assistant Attorney General, on
brief), for appellee.


The circuit court convicted Jason J. Brayden of abduction and aggravated malicious

wounding following his guilty pleas. The circuit court sentenced Brayden to a total of thirty years'

incarceration with twelve years suspended. On appeal, Brayden challenges the voluntariness of his

guilty pleas and argues that the circuit court abused its sentencing discretion. Brayden also argues

that the circuit court imposed a void sentence for his abduction conviction. For the following

reasons, we affirm the circuit court's judgment.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

---

* This opinion is not designated for publication. Code § 17.1-413.

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On June 15, 2019, the Hampton Police Division received a domestic assault complaint from a female caller who stated she had escaped a residence by climbing out of a window and locating a good Samaritan down the street. Officer Goodman responded to the complaint. Upon arrival, Officer Goodman observed the victim, Ms. Tara Madden ("Madden"), sitting on the porch with a large pool of blood beneath her. In addition, Officer Goodman observed blood coming from Madden's mouth, a burn mark on her shoulder, and numerous scratches on her neck.

When questioned about her injuries, Madden responded that she had fought with her boyfriend, Jason Brayden ("Brayden"), arguing about people talking to her at work. Madden stated that Brayden threw her down on the bed, broke her cell phone, and punched her in the face—breaking her jaw and causing the loss of two teeth. She also reported that Brayden locked all the doors and threatened to kill her if she tried to leave again. Madden claimed she then grabbed a bag of ice out of the freezer and struck Brayden on the back of the head. Immediately thereafter, she ran to the bedroom and climbed out of the window.

On October 29, 2021, in the Circuit Court of the City of Hampton, Brayden entered guilty pleas to his aggravated malicious wounding and abduction charges. Prior to accepting Brayden's guilty pleas, the circuit court, as is required, engaged Brayden in the following plea colloquy:

> THE COURT: Do you fully understand the charges against you?
>
> [BRAYDEN]: Yes, ma'am.
>
> THE COURT: Do you understand what the Commonwealth must prove before you may be found guilty of these charges?
>
> [BRAYDEN]: Yes, ma'am.

THE COURT: Have you had enough time to discuss with your attorney any possible defenses that you may have to these charges?

[BRAYDEN]: Yes, ma'am.

THE COURT: Have you discussed with your attorney whether you should plead not guilty, guilty or nolo contendere?

[BRAYDEN]: Yes, ma'am.

THE COURT: And after that discussion did you decide for yourself that you would plead guilty?

[BRAYDEN]: Yes, ma'am.

THE COURT: Are you entering these pleas of guilty because you are, in fact, guilty of the crime charges?

[BRAYDEN]: Yes, ma'am.

. . . .

THE COURT: Has anyone connected with your arrest or prosecution such as the police or the Commonwealth's Attorney or any other person in any manner threatened you or forced you to enter these pleas of guilty?

[BRAYDEN]: No, ma'am.

THE COURT: Have they made any promises to you concerning your pleas of guilty?

[BRAYDEN]: No, ma'am.

. . . .

THE COURT: All right. Sir, do you understand all of the—excuse me, do you understand all of the questions that I've asked you?

[BRAYDEN]: Yes, ma'am.

THE COURT: Have you answered my questions truthfully?

[BRAYDEN]: Yes, ma'am.

THE COURT: And do you have any questions that you would like to ask the Court?

[BRAYDEN]: No, ma'am.

After conducting the colloquy and listening to the summary of the evidence, the circuit court found Brayden guilty.

Brayden's sentencing hearing was held on February 28, 2022. Madden provided a victim impact statement and testified that she received four reconstructive surgeries on her jaw and no longer had any feeling in her face where the jawbone had pushed into her mouth—and that this loss of feeling was permanent. She also testified she needed implants to replace the teeth she had lost in the attack and had a scar along the bottom of her neck. Additionally, the Commonwealth introduced photographs of Madden from the night of the attack, with her jaw wired shut, and after her surgery. Madden also testified that she had developed post-traumatic stress disorder (PTSD) and regularly struggled with horrible nightmares and anxiety. As a result, she struggled to maintain employment or to feel safe.

Brayden also testified during the sentencing hearing. He acknowledged that he had "hit [Madden] one time really hard" and reported that he had a concussion and three staples in his head where Madden had hit him with the bag of ice as she escaped the house. While in custody, Brayden stated he had participated in Alcoholics Anonymous and anger management classes, had completed the "Step Up" program, and was taking religious classes. Brayden claimed full responsibility for his actions and read to the circuit court from a prepared statement that he hoped his guilty pleas would allow "closure to this ordeal and to start the healing process" so he and Madden could move on with their lives.

The circuit court noted Brayden's accepting of responsibility and that it had listened very carefully to his letter to the court. The circuit court also acknowledged that it believed Brayden was, in fact, remorseful about the injuries he had caused Madden and was appreciative that he had

refrained from contacting her since 2019.  The circuit court explained, however, that it needed to weigh Brayden's remorse against the fact that Madden had suffered substantial, permanent injury.

As such, the circuit court sentenced Brayden to ten years' incarceration with five years suspended on the abduction charge, and to twenty years' incarceration with seven years suspended on the aggravated malicious wounding charge.  The written order the circuit court later entered, however, stated the reverse, imposing twenty years of incarceration on the abduction charge and ten years of incarceration on the aggravated malicious wounding charge.  As such, on March 29, 2022, the circuit court entered an order correcting the original sentencing order and imposing the sentence that was announced by the trial judge at the sentencing hearing.  That same day, Brayden filed his appeal.

## ANALYSIS

### I.  Voluntary Pleas

Brayden first argues that his guilty pleas were not voluntary, intelligent, or knowing because the circuit court failed to review the specific elements of the offenses charged against him.  He argues it was error for the circuit court to accept his guilty pleas.  Acknowledging that he failed to move the circuit court to allow him to withdraw his pleas or to otherwise preserve his argument for appeal, Brayden asks this Court to address his arguments under the good cause and ends of justice exceptions to Rule 5A:18.[1]

"'Good cause' relates to the reason why an objection was not stated at the time of the ruling."  *Pope v. Commonwealth*, 60 Va. App. 486, 508 (2012) (quoting *Campbell v. Commonwealth*, 14 Va. App. 988, 996 (1992) (*en banc*)).  "The Court may only invoke the 'good cause' exception where an appellant did not have the *opportunity* to object to a ruling in the trial

---

[1] "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."  Rule 5A:18.

court." *Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011) (emphasis added) (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)). Otherwise, "the exception does not apply." *Id.*

Here, there is nothing to suggest Brayden had no opportunity to object or to move to withdraw his pleas. Between October of 2021 and March of 2022, Brayden could have moved to withdraw his guilty pleas.[2] He chose not to. Given this substantial opportunity, this Court finds Brayden fails to show good cause to address his arguments related to his pleas on appeal.

"The 'ends of justice' exception to Rule 5A:18 is 'narrow and to be used sparingly.'" *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)). Whether to apply the ends of justice exception involves two questions: "(1) whether there is error contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). Thus, the "ends of justice" exception to Rule 5A:18 "requires proof of an error that was 'clear, substantial and material.'" *West v. Commonwealth*, 43 Va. App. 327, 338 (2004) (quoting *Brown v. Commonwealth*, 8 Va. App. 126, 132 (1989)).

Although the entry of guilty pleas involves the waiver of several rights, they are constitutionally valid to the extent they are made "'voluntar[ily]' and 'intelligent[ly].'" *Bousley v. United States*, 523 U.S. 614, 618 (1998). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Thus, the record must contain "an affirmative showing that [the guilty plea] was intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

---

[2] Brayden would have had twenty-one days after the February 28, 2022 sentencing order to withdraw his guilty pleas before the circuit court lost jurisdiction.

Here, the record demonstrates the circuit court conducted a thorough plea colloquy with Brayden, affirmatively showing his guilty pleas were knowingly, intelligently, and voluntarily entered. During the colloquy, Brayden acknowledged he understood the elements of the charges against him, what the Commonwealth had to prove, and the potential maximum sentence he could have received for each charge. Moreover, Brayden acknowledged he understood that his guilty pleas waived several important trial rights. Thus, the record contains an "affirmative showing" that Brayden's guilty pleas were "intelligent and voluntary." *Id.*

Accordingly, after careful review of the record, we conclude that Brayden's guilty pleas were made knowingly, voluntarily, and intelligently. Therefore, the ends of justice exception is inapplicable because no grave injustice could result. As such, Rule 5A:18 bars consideration of Brayden's argument on appeal.

## II. Scrivener's Error

Brayden next argues that the circuit court's sentencing order was void *ab initio* because it imposed twenty years' imprisonment on the abduction conviction, which exceeded the statutory maximum for that offense. Moreover, Brayden argues the circuit court did not have jurisdiction to enter the March 29, 2022 order correcting the sentences because it was not labeled "an order of correction." As such, Brayden contends that he is entitled to a new sentencing hearing under *Rawls v. Commonwealth*, 278 Va. 213 (2009). We disagree.

Although Rule 1:1 imposes a twenty-one-day window after entry of an order before it becomes final, "Code § 8.01-428(B) provides a limited exception to the finality imposed by Rule 1:1." *Minor v. Commonwealth*, 66 Va. App. 728, 740 (2016). Under Code § 8.01-428(B), "[c]lerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission may be corrected by the court at any time on its own initiative or upon the motion of any party." However, this can only occur when "the record clearly

- 7 -

supports such corrections." *Sch. Bd. of City of Lynchburg v. Caudill Rowlett Scott, Inc.*, 237 Va. 550, 555 (1989) (quoting *Cutshaw v. Cutshaw*, 220 Va. 638, 641 (1979)). "We apply an abuse of discretion standard to evaluate whether the trial court entered a valid *nunc pro tunc* order." *Ziats v. Commonwealth*, 42 Va. App. 133, 140 (2003).

Here, the record clearly demonstrates that the circuit court's March 29, 2022 order properly corrected a clerical mistake in the original sentencing order. At the sentencing hearing, the circuit court explicitly stated that it was sentencing Brayden to ten years' incarceration with five years suspended on the abduction charge, and to twenty years' imprisonment with seven years suspended on the aggravated malicious wounding charge, for a total of thirty years' imprisonment with twelve years suspended. These sentences are within the statutory range for each offense. *See* Code §§ 18.2-10, -47, -51.2. Accordingly, the original sentencing order's inversion of those sentences, while keeping the same total sentence, was plainly a clerical error correctable under Code § 8.01-428(B). *See Nelson v. Commonwealth*, 12 Va. App. 835, 839-40 (1991) (holding that a misstatement on the record by the trial court regarding the length of incarceration a defendant was ordered to serve was a clerical mistake correctable under Code § 8.01-428(B)). Furthermore, nowhere does Code § 8.01-428(B) require a corrective order to be labeled "an order of correction."

The record clearly supports the conclusion that the mistake in the final sentencing order was a clerical one. As such, the circuit court was well within its right to correct that clerical mistake in the March 29, 2022 order. Accordingly, we hold that it was not an abuse of discretion for the circuit court to correct the sentencing order. Therefore, Brayden's abduction sentence is not void.

### III. Sentencing Discretion

Finally, Brayden argues that the circuit court abused its discretion by sentencing him to a total of thirty years' incarceration with twelve years suspended. He asserts that the circuit court

failed to adequately consider his mitigating circumstances. In other words, that eighteen years of active incarceration was "excessive" and unduly harsh.

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565).

Moreover, "[c]riminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du*, 292 Va. at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.*

The trial judge explicitly stated at the sentencing hearing that she appreciated and believed Brayden's remorse as articulated in his letter to the court. The judge also took note of the classes Brayden attended and other changes Brayden had made since the attack. But, in the end, the court made clear that it had to weigh these mitigating factors against the substantial, permanent impact of the attack upon the victim.

Given the circuit court's express consideration of the mitigating factors in Brayden's sentencing in addition to the fact that Brayden's sentences fall below the statutory maximums, we find no abuse of discretion by the circuit court. As such, we hold the circuit court did not err when it imposed Brayden's sentences.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*